# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

FEDERAL DEPOSIT INSURANCE
CORPORATION, as receiver for Vantus
Bank,

        Plaintiff,

vs.

MICHAEL W. DOSLAND, MICHAEL
S. MODERSKI, ARLENE T. CURRY,
BARRY E. BACKHAUS, GARY L.
EVANS, RONALD A. JORGENSON,
JON G. CLEGHORN, and CHARLES D.
TERLOUW,

        Defendants.

No. C 13-4046-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING PLAINTIFF'S
MOTION TO STRIKE CERTAIN
AFFIRMATIVE DEFENSES**

---

## TABLE OF CONTENTS

I.    **INTRODUCTION**.................................................................**3**
    A.   *The Parties' Pleadings*.............................................. 3
    B.   *The Motion To Strike Affirmative Defenses*................................ 6

II.   **LEGAL ANALYSIS** ......................................................**7**
    A.   *Rule 12(f) Standards* ............................................... 7
    B.   *Applicability Of Twom-bal Pleading Standards To
        Affirmative Defenses*............................................... **9**
    C.   *"Sufficiency" Of The Challenged Defenses* .............................. **11**
        1.   *The "exculpation clause" affirmative defense*..................... 11
        2.   *The "comparative fault" affirmative defense* ...................... 13
        3.   *The "failure to mitigate" affirmative defense*..................... 17
        4.   *The "equitable" affirmative defenses*.............................. 20

III.  *CONCLUSION* ..................................................... **23**

The Federal Deposit Insurance Corporation as Receiver for Vantus Bank (FDIC-R) filed this action, pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1811 *et seq.*, against the former officers and directors of Vantus Bank in Sioux City, Iowa, asserting claims of gross negligence, negligence, and breach of fiduciary duty. The FDIC-R's claims are based primarily on its allegations that the defendants caused the bank to use $65 million—120 percent of its core capital—to purchase fifteen high risk collaterized debt obligations backed by Trust Preferred Securities (CDO-TruPS) without due diligence and in disregard and ignorance of regulatory guidance about the risks and limits on purchases of such securities. The defendants have asserted various affirmative defenses, among them that the FDIC-R's claims are barred, in whole or in part, by the following: equitable doctrines, including estoppel, laches, unclean hands, and/or waiver; the FDIC-R's failure to mitigate damages; damages claimed result from the acts or omissions of someone other than the defendants; and an exculpation provision in the bank's articles of incorporation, which bars the defendants' liability. The FDIC-R has now moved to strike these specific affirmative defenses pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

## I. INTRODUCTION

### A. The Parties' Pleadings

In its Complaint (docket no. 2), filed May 20, 2013, the FDIC-R brought this lawsuit in its capacity as Receiver for Vantus Bank of Sioux City, Iowa, (the Bank)[1] to recover in excess of $58 million in losses that the Bank allegedly suffered as a result of the negligence, gross negligence, and breach of fiduciary duty of the Bank's officers and directors prior to the closing of the Bank by the Office of Thrift Supervision (OTS)[2] on September 4, 2009. Two of the defendants were officers of the Bank (the Officer Defendants): Michael Dosland, now a citizen of Wisconsin, was the Bank's Chief Executive Officer and President, as well as a member of the Board of Directors, from January 2006 until he resigned in July 2008; and Michael S. Moderski, also now a citizen of Wisconsin, was the Bank's Chief Financial Officer and Controller from April 2006 until the OTS closed the Bank. The other six defendants, like Dosland, were members of the Bank's Board of Directors (the Director Defendants): Barry E. Backhaus, a citizen of Iowa, was a Director from 1987 until the OTS closed the Bank, and was the Bank's Interim President from July 2008 to December 2008; Arlene T. Curry, a citizen of South Dakota, was a Director from 2002 until the OTS closed the Bank; Gary L. Evans, a citizen of Iowa, was a Director from 1989 until the OTS closed

---

[1] The FDIC-R alleges that the Bank opened for business in 1923 as First Savings Bank of Siouxland; it changed its name to First Federal Bank in 1999; and changed its name again to Vantus Bank in 2007.

[2] The FDIC-R alleges that the OTS was created by Congress in 1989 as a United States agency within the Department of the Treasury to, among other things, regulate and govern banks, but Congress abolished the OTS and transferred its powers to the Office of the Comptroller of the Currency in 2010.

the Bank; Ronald A. Jorgenson, a citizen of Iowa, was a Director from July 2005 until the OTS closed the Bank; Jon C. Cleghorn, a citizen of South Dakota, was a Director from 1998 until the OTS closed the Bank; and Charles D. Terlouw, a citizen of Iowa, was a Director from July 2006 until the OTS closed the Bank. Like the FDIC-R, I will refer to the Director Defendants and the Officer Defendants collectively as the D&O Defendants.

The adequacy of the pleading of the FDIC-R's claims, including the factual allegations on which its claims are based, is not at issue at present. Therefore, only a cursory statement of the factual background to the FDIC-R's claims is required. Suffice it to say that the FDIC-R alleges that, soon after they were hired by the other Director Defendants, the Officer Defendants, Dosland and Moderski, who allegedly lacked sufficient knowledge and experience, and whom the other Director Defendants had insufficiently vetted, convinced the Director Defendants to amend the Bank's Investment Policy to give Dosland and Moderski what the FDIC-R describes as "carte blanche authority" over the Bank's investment policies, procedures, and reviews, with little or no oversight by the Director Defendants. The Officer Defendants then began investing in CDO-TruPS, which are high risk, complex securities. The FDIC-R alleges that, from December 2006 through March 2007, the Officer Defendants, acting for the Bank, borrowed $50 million through certificates of deposit and advances from the Federal Home Loan Banks (FHLB) and used the proceeds to purchase $50 million of CDO-TruPS. Eventually, the Bank borrowed for and purchased more than $65 million of CDO-TruPS, which comprised more than 120% of the Bank's capital, in violation, disregard, and ignorance of limitations in banking regulations and the Bank's investment policies. When the OTS learned of the Bank's purchases of CDO-TruPS, it initially gave notice to the D&O Defendants that at least two of the purchases were in

excess of regulatory guidelines and, eventually, after the D&O Defendants failed to remedy the problems, closed the Bank.

In its Complaint, the FDIC-R asserts the following claims: in **Count 1**, negligence of the Officer Defendants; in **Count 2**, gross negligence "or other stricter standard of care" against the Officer Defendants; in **Count 3**, breach of fiduciary duty by the Officer Defendants; in **Count 4**, negligence of the Director Defendants (including Dosland); in **Count 5**, gross negligence "or other stricter standard of care" against the Director Defendants (including Dosland); and in **Count 6**, breach of fiduciary duty by the Director Defendants (including Dosland).

On July 29, 2013, the D&O Defendants filed a joint Answer To Complaint And Affirmative Defenses (docket no. 8), denying the FDIC-R's claims. More importantly, for present purposes, the D&O Defendants asserted several affirmative defenses, including the following:

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by various equitable doctrines, including without limitation, the doctrines of estoppel, laches, unclean hands, and/or waiver.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff has failed to mitigate its alleged injuries or damages, if any, and this failure bars or reduces recovery.

* * *

### SIXTH AFFIRMATIVE DEFENSE

The damages allegedly sustained by Plaintiff occurred as a result of the acts or omissions or negligence of someone other than the D&O Defendants, which bars recovery by Plaintiff or, in the alternative, Plaintiff's recovery should be reduced by an amount in proportion to the percentage of fault assessed against Plaintiff or others pursuant to Iowa Code chapter 668 and Iowa common law.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the exculpation provision in the Bank's Articles of Incorporation, a true and correct copy of which is attached hereto as Exhibit A.

Answer (docket no. 8), 14-15.

### B. The Motion To Strike Affirmative Defenses

On August 22, 2013, the FDIC-R filed the Motion To Strike Certain Affirmative Defenses (docket no. 9) now before me, seeking an order striking the D&O Defendants' second, third, sixth, and seventh affirmative defenses pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. On September 13, 2013, the D&O Defendants filed their Resistance To Plaintiff's Motion To Strike Certain Affirmative Defenses (docket no. 12). On October 9, 2013, the FDIC-R filed its Reply Brief In Support Of Its Motion To Strike Certain Affirmative Defenses (docket no. 19).

Unfortunately, the press of other work—including expedited proceedings on a request for a preliminary injunction against trademark infringement and a Verified Complaint And Petition For Return Of Children, seeking return to Mexico of children allegedly wrongfully retained in the United States, filed November 7, 2013, which required expedited proceedings under international and federal law—prevented my more timely attention to the present motion. Also, although both parties requested oral arguments on the FDIC-R's Motion To Strike, my crowded schedule does not allow me to accommodate the parties' request for oral arguments on the present motions without causing further undue delay of the proceedings. Moreover, I find the parties' written submissions fully address the issues raised. Therefore, I have resolved the pending motion on the parties' written submissions.

## II.     LEGAL ANALYSIS

### A.     Rule 12(f) Standards

As I most recently explained,

> Rule 12 of the Federal Rules of Civil Procedure . . .
> provides for a motion to strike, as follows:
>
> > **(f) Motion to Strike.** The court may strike from a
> > pleading an insufficient defense or any redundant,
> > immaterial, impertinent, or scandalous matter. The
> > court may act:
> >
> > > **(1)** on its own; or
> > >
> > > **(2)** on motion made by a party either before
> > > responding to the pleading or, if a response is
> > > not allowed, within 21 days after being served
> > > with the pleading.
>
> Fed.R.Civ.P. 12(f). In ruling on a Rule 12(f) motion, the
> court "enjoy[s] liberal discretion," and its ruling is reviewed
> only for abuse of that discretion. *See BJC Health Sys. v.
> Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir.2007);
> *Nationwide Ins. Co. v. Central Missouri Elec. Coop., Inc.*,
> 278 F.3d 742, 748 (8th Cir.2001); *Stanbury Law Firm v.
> IRS*, 221 F.3d 1059, 1063 (8th Cir.2000); *Chock v.
> Northwest Airlines, Inc.*, 113 F.3d 861, 863–64 n. 3 (8th
> Cir.1997). The rule embodies this discretion, because it is
> cast in permissive terms ("the court may act ...") rather than
> mandatory terms. Fed.R.Civ.P. 12(f); *see also Stanbury*,
> 221 F.3d at 1063 ("Because the rule is stated in the
> permissive, however, it has always been understood that the
> district court enjoys 'liberal discretion' thereunder."). The
> Eighth Circuit Court of Appeals has also recognized that,
> "[d]espite this broad discretion ... striking a party's
> pleadings is an extreme measure, and, as a result, we have
> previously held that '[m]otions to strike under Fed.R.Civ.P.
> 12(f) are viewed with disfavor and are infrequently

granted.'" *Stanbury*, 221 F.3d at 1063 (quoting *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir.1977), in turn citing 5 Wright & Miller, Federal Practice and Procedure: Civil § 1380 at 783 (1969)); *accord BJC Health Sys.*, 478 F.3d at 917 (citing *Stanbury*). Applying these standards, the Eighth Circuit Court of Appeals has ruled that even matters that are not "strictly relevant" to the principal claim at issue should not necessarily be stricken, if they provide "important context and background" to claims asserted or are relevant to some object of the pleader's suit. *Id.*

*Holt v. Quality Egg, L.L.C.*, 777 F. Supp. 2d 1160, 1168-69 (N.D. Iowa 2011) (footnotes omitted). Furthermore,

the court should not strike a defense as "legally insufficient" if the defense is either "'sufficient as a matter of law or if it fairly presents a question of law or fact which the court ought to hear.'" *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir.1977) (quoting 2A Moore's Federal Practice ¶ 12.21 at 2437 (2d ed. 1975)). Therefore, the Eighth Circuit Court of Appeals has been "reluctant to rule" on the sufficiency of a defense that presents either legal or factual uncertainty "without the benefit of a full record." *Id.* On the other hand, the court may properly strike a defense under Rule 12(f) as "legally insufficient," if it is foreclosed by prior controlling decisions or statutes. *See United States v. Dico, Inc.*, 266 F.3d 864, 879–80 (8th Cir.2001) (the district court properly struck a due process affirmative defense on the ground that it was foreclosed by a prior decision of the Eighth Circuit Court of Appeals and a subsequent decision of the United States Supreme Court had not undermined the appellate court's decision, as the defendant argued); *United States v. Winnebago Tribe of Nebraska*, 542 F.2d 1002, 1007 (8th Cir.1976) (a defense was "clearly insufficient" where it was contrary to provisions of the Flood Control Act of 1944).

*Holt*, 777 F. Supp. 2d at 1169 n.5; *accord International Motor Contest Ass'n, Inc. v. Staley*, 434 F. Supp. 2d 650, 662 (N.D. Iowa 2006).

## B. Applicability Of Twom-bal Pleading Standards To Affirmative Defenses

The FDIC-R asserts, *inter alia*, that the challenged affirmative defenses are "insufficient," because they lack the necessary pleading of facts to show the "plausibility" of the affirmative defenses under the *Twom-bal* standard.[3] Although the FDIC-R concedes, in its Reply, that "[a]fter *Twombly* and *Iqbal*, it is an open question in the Eighth Circuit whether affirmative defenses are subject to a heightened pleading standard," the FDIC-R asks me "to adopt the position taken by the [court in *EEOC v. Hibbing Taconite Co.*, 266 F.R.D. 260, 267-68 (D. Minn. 2009),] which requires a heightened pleading standard 'where the basis is not apparent by the defense's bare assertion.'" Plaintiff's Reply (docket no. 19), 1 (quoting *Hibbing Taconite Co.*, 266 F.R.D. at 268).

I conclude, first, that the FDIC-R's concession that the pleading standard for affirmative defenses is "an open question in the Eighth Circuit" establishes that the challenged affirmative defenses should *not* be stricken pursuant to Rule 12(f) for failure to meet the *Twom-bal* "plausibility" pleading standard. The Rule 12(f) "insufficient defense" standard would warrant striking an affirmative defense that did not meet the *Twom-bal* "plausibility" pleading standard if controlling precedent required the pleading of affirmative defenses to meet that standard, *see Holt*, 777 F. Supp. 2d at

---

[3] "*Twom-bal*" is my nickname for the United States Supreme Court's twin decisions on pleading requirements, and standards for dismissal for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for claims in federal court. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

1169 n.5; *International Motor Contest Ass'n*, 434 F. Supp. 2d at 662, but it does not. Furthermore, I am not convinced that it is appropriate to impose the *Twom-bal* "plausibility" pleading standard on the pleading of affirmative defenses. As other federal magistrate judges and district judges have cogently observed,

> [C]onsideration [must be] given to the requirement of Rule 12(b) that every defense to a claim must be asserted in the required responsive pleading. "Given this dictate and the early procedural posture at which defendants commonly must plead affirmative defenses, it is unreasonable to expect Defendant to plead affirmative defenses with the particularity that the [plaintiff's] motion implies is necessary." [*U.S. ex rel. Monahan v. Robert Wood Johnson University Hosp. at Hamilton*, 2009 WL 4576097, *5 (D.N.J. 2009)].

*Hayden v. United States*, No. 4:12 CV 2030 DDN, 2013 WL 5291755, *3 (E.D. Mo. Sept. 19, 2013) (slip op.). Indeed, contrary to the view expressed in *Hayden*, I conclude that, even in the case of affirmative defenses that are based on "bare bones conclusory allegations," the appropriate procedure for clarification of the factual bases for affirmative defenses is discovery, and that the appropriate procedure for challenging the factual sufficiency of affirmative defenses is ordinarily a motion for summary judgment. *Contra id.*

I decline the FDIC-R's invitation to require the pleading of affirmative defenses to the *Twom-bal* "plausibility" pleading standard and, exercising my "liberal discretion," *see Holt*, 777 F. Supp. 2d at 1168 (internal quotation marks and citations omitted), I decline to strike affirmative defenses as "insufficient" pursuant to Rule 12(f) because they do not meet that pleading standard.

### C. "Sufficiency" Of The Challenged Defenses

I will not consider the "sufficiency" of the challenged defenses in the order that they were pleaded by the D&O Defendants or challenged by the FDIC-R. Rather, for reasons that may become apparent, I will consider them in reverse numerical order, as they were defended by the D&O Defendants.

#### 1. The "exculpation clause" affirmative defense

The D&O Defendants' seventh affirmative defense is that "Plaintiff's claims are barred, in whole or in part, by the exculpation provision in the Bank's Articles of Incorporation, a true and correct copy of which is attached hereto as Exhibit A." Answer at 15. It is appropriate to consider the "sufficiency" of this affirmative defense first, because it appears to be factually and legally distinct from the other challenged affirmative defenses.

The FDIC-R argues that the document attached to the Answer, on which this affirmative defense expressly relies, is not, in fact, the Bank's Articles of Incorporation, but the Certificate of Incorporation of First Federal Bankshares, Inc., the holding company of the Bank, a completely separate entity from the Bank, and one not involved in this action. The D&O Defendants argue that the FDIC-R has done nothing to substantiate its argument, other than to make these broad assertions, and that the FDIC-R's motion to strike this defense is premature, because discovery may reveal that the Directors of First Federal Bankshares, Inc., and the Bank were the same individuals and that the Bank's Articles of Incorporation may have a similar "exculpation" provision. They excuse their attachment of what might be the "wrong" Articles of Incorporation on the ground that they have not yet had the opportunity to discover all of the pertinent documents, as those documents may have existed over time.

It is plain from the face of the document attached to the D&O Defendants' Answer as Exhibit A that it is *not* the Articles of Incorporation of the Bank, but the Certificate of Incorporation of First Federal Bankshares, Inc., a completely separate corporation from the Bank. The D&O Defendants have pointed to nothing in that document that demonstrates that its terms—including, specifically, the purported "exculpation clause"—applies to or governs the liability of the Bank's Directors. Thus, while I declined, above, to impose the *Twom-bal* "plausibility" pleading standard on affirmative defenses, I believe that, where an affirmative defense is based on *specific* factual and legal allegations that are demonstrably "insufficient" to support the defense, the defense is "insufficient" within the meaning of Rule 12(f). That is the case with the D&O Defendants' seventh affirmative defense, because the defense expressly relies on Exhibit A to the Answer, but that document is *not* the Articles of Incorporation of the Bank, but the Certificate of Incorporation of First Federal Bankshares, Inc., so that it provides no factual or legal basis for an "exculpation clause" defense.

Therefore, I grant the portion of the FDIC-R's Motion To Strike pertaining to the D&O Defendants' seventh affirmative defense. Doing so, however, will not preclude the D&O Defendants from seeking leave to amend their Answer to assert an "exculpation clause" affirmative defense, if discovery reveals a factual and legal basis for such a defense.[4]

---

[4] I acknowledge the counterintuitive effect of striking this defense, because the basis offered for it is demonstrably "insufficient," where I would likely have declined to strike it, if no factual basis at all had been offered for it in the first instance, for the reasons that I rejected the *Twom-bal* "plausibility" pleading standard for affirmative defenses. I conclude, however, that having once offered a demonstrably insufficient basis for this affirmative defense, the D&O Defendants cannot now remedy the "insufficiency" of this affirmative defense simply by deleting any basis for it in an

(Footnote continued . . .

## 2. The "comparative fault" affirmative defense

The D&O Defendants' sixth affirmative defense is their "fault of others" or "comparative fault" affirmative defense. More specifically, that affirmative defense is stated as follows:

> The damages allegedly sustained by Plaintiff occurred as a result of the acts or omissions or negligence of someone other than the D&O Defendants, which bars recovery by Plaintiff or, in the alternative, Plaintiff's recovery should be reduced by an amount in proportion to the percentage of fault assessed against Plaintiff or others pursuant to Iowa Code chapter 668 and Iowa common law.

Answer at 15.

The FDIC-R challenges this defense on the ground that district courts within this circuit and district and appellate courts outside of this circuit have rejected "comparative fault" defenses in cases such as this on the ground that any "duty" of the banking regulatory agencies runs to the public (and the insurance fund), not to the institution or its officers and directors. The FDIC-R argues that such a defense based on Iowa law is "insufficient," because the D&O Defendants will be unable to establish

---

amended Answer. This is so, because an amendment to reassert this affirmative defense would stand on the footing of a "post-dismissal" request to amend, which is subject to more stringent standards than the "freely given" standard stated in Rule 15(a), and which involves "[c]onsiderations [that] include whether the pleader chose to stand on its original pleadings in the face of a motion to dismiss that identified the very deficiency upon which the court dismissed the complaint; reluctance to allow a pleader to change legal theories after a prior dismissal; whether the post-dismissal amendment suffers from the same legal or other deficiencies as the dismissed pleading; and whether the post-dismissal amendment is otherwise futile." *Meighan v. TransGuard Ins. Co. of Am., Inc.*, ___ F. Supp. 2d ___, ___, 2013 WL 5596915, *8 (N.D. Iowa Oct. 11, 2013).

one of the three factors that govern the existence of a "duty," the "public policy considerations" factor, because the "public duty doctrine" dictates that, if a duty is owed to the public generally, there is no liability to an individual member of that group. Moreover, the FDIC-R argues that the "comparative fault" defense is foreclosed by the "no duty rule."

The D&O Defendants argue that this defense is "sufficient," because, in *O'Melveny & Meyers v. FDIC*, 512 U.S. 79, 80–81 (1994), and *DiVall Insured Income Fund LP v. Boatmen's First National Bank*, 69 F.3d 1398, 1399 (8th Cir. 1995), the United States Supreme Court and the Eighth Circuit Court of Appeals, respectively, concluded that what I will call "defenses to defenses" based on "federal common law"—such as the "no duty rule"—are unavailable to the FDIC-R when the FDIC-R has asserted claims pursuant to FIRREA. Thus, they argue that, because FIRREA places the FDIC-R in the shoes of the insolvent bank or savings and loan to work out its claims under state law, any defense that is good against the original party under state law is good against the FDIC-R as the receiver. They also argue that the FDIC-R seems to acknowledge that the defense is essentially fact-driven, but there has been no discovery as yet, so that the factual basis for the defense is unknown. Thus, they argue that it would be premature to strike the defense.

The D&O Defendants assert that the "discretionary function exception" under the Federal Tort Claims Act (FTCA), likewise, does not preclude this defense, even though the FDIC-R did not expressly assert that the "discretionary function exception" would bar this particular defense. They argue that barring the defense on this ground is premature and likely wrong. More specifically, the D&O Defendants argue that the FTCA has no direct application in this case brought *by* the FDIC-R, rather than a case involving tort claims *against* the FDIC-R. The D&O Defendants argue that *O'Melveny* likely also puts an end to a *defense by the FDIC-R to a defense* based on the FTCA, that

the FDIC-R has cited no binding precedent holding that the "discretionary function exception" in the FTCA prohibits any affirmative defense asserted in this case, and that applicability of the "discretionary function exception" is also fact-based.

In reply, the FDIC-R argues that neither *O'Melveny* nor *DiVall* mentions the "no duty rule," neither disapproves of it, neither involved claims by the FDIC against a bank's former directors and officers, and that the "no duty rule" is consistent with FIRREA and Iowa law. The FDIC-R acknowledges, however, that the applicability of the "discretionary function exception" to the FTCA in cases brought by the FDIC-R is an "open question" in the Eighth Circuit and subject to a split among courts that have considered the issue.

The FDIC-R cannot demonstrate that a "comparative fault" defense in an action by the FDIC-R against directors and officers of a failed banking institution is barred by controlling precedent. *See Holt*, 777 F. Supp. 2d at 1169 n.5 (stating Rule 12(f) standards to strike a defense as "insufficient"); *International Motor Contest Ass'n*, 434 F. Supp. 2d at 662 (same). While the FDIC-R is correct that neither *O'Melveny* nor *DiVall* expressly addressed the viability of the "no duty" rule, both at least arguably *imply* that the "no duty rule," like other "federal common law" defenses by the FDIC-R, does not survive. Indeed, the FDIC-R is forced to concede that there is a split in authority among the *district* courts on the question. The FDIC-R argues that the district court decisions holding that the "no duty" rule (for agency conduct both before and after the closing of the bank) survives *O'Melveny* should be followed. That argument falls well short of what I consider adequate grounds for striking an affirmative defense that is not foreclosed by controlling precedent. Rather, it demonstrates that the viability of the "comparative fault" defense is "a question of law or fact which the court ought to hear." *Holt*, 777 F. Supp. 2d at 1169 n.5 (internal quotation marks and citations omitted); *International Motor Contest Ass'n*, 434 F. Supp. 2d at 662.

Similarly, the "discretionary function exception" of the FTCA does not require the striking of this defense, where the FDIC-R admits that it is an "open question in the Eighth Circuit" whether the "discretionary function exception" in the FTCA is applicable to affirmative defenses to claims *by* the FDIC-R. Plaintiff's Reply at 2; *Holt*, 777 F. Supp. 2d at 1169 n.5 (stating Rule 12(f) standards to strike a defense as "insufficient"); *International Motor Contest Ass'n*, 434 F. Supp. 2d at 662 (same). It also is not a settled question in this circuit whether *O'Melveny* precludes the FDIC-R from relying on a *defense to a defense* based on the "discretionary function exception" in the FTCA, where *O'Melveny* arguably bars the FDIC-R from relying on other *defenses to defenses* based on federal law outside of the FIRREA. Again, this is "a question of law or fact which the court ought to hear." *Holt*, 777 F. Supp. 2d at 1169 n.5 (internal quotation marks and citations omitted); *International Motor Contest Ass'n*, 434 F. Supp. 2d at 662.

In my view, the much bigger impediment to the "comparative fault" affirmative defense is Iowa law concerning when a duty exists and, by logical extension, the Iowa "public duty rule." Unfortunately, the D&O Defendants appear to have ignored that prong of the FDIC-R's argument, except to argue that whether the "comparative fault" defense is viable is a fact-driven issue that cannot be decided on a motion to strike before any discovery has been conducted. The Iowa Supreme Court has explained that, "[i]n determining whether a defendant owes a legal duty to a plaintiff, three factors usually control: (1) the relationship between the parties, (2) reasonable foreseeability of harm to the person who is injured, and (3) public policy considerations." *Raas v. State*, 729 N.W.2d 444, 448 (Iowa 2007) (citing *Kolbe v. State*, 625 N.W.2d 721, 728 (Iowa 2001)). In *Raas*, the court also explained, "Under the public-duty doctrine, '"if a duty is owed to the public generally, there is no liability to an individual member of that group."'" *Id*. (quoting *Kolbe*, 625 N.W.2d at 729, in turn quoting *Wilson v.*

16

*Nepstad*, 282 N.W.2d 664, 667 (Iowa 1979)). In *Raas*, the Iowa Supreme Court also concluded that the "public duty doctrine" was "alive and well," even after adoption of the State Tort Claims Act. *Id.* at 448-49.

The FDIC-R is right when it points out that a "duty" must come from somewhere and that the D&O Defendants have not, thus far, identified any duty that is not simply a "duty owed to the public generally," which would be insufficient, under Iowa law, to support a "comparative fault" defense against the FDIC-R. *See id.* On the other hand, the D&O Defendants were not required to plead a *plausible* basis for "comparative fault" to support their affirmative defenses, *see*, *supra*, Section II.B., beginning at page 9. My considerable doubt that they will ultimately be able to provide a factual and legal basis for such a duty does not meet the standard for striking a defense as "insufficient" under Rule 12(f); rather, the "comparative fault" defenses raise "a question of law or fact which the court ought to hear." *See Holt*, 777 F. Supp. 2d at 1169 n.5 (stating Rule 12(f) standards to strike a defense as "insufficient"); *International Motor Contest Ass'n*, 434 F. Supp. 2d at 662 (same). Furthermore, the sufficiency of this defense is better left for resolution after discovery, for example, on a motion for summary judgment. *See id.* (explaining that the sufficiency of a defense that presents either legal or factual uncertainty that should not be resolved "without the benefit of a full record" should not be stricken pursuant to Rule 12(f)); *International Motor Contest Ass'n*, 434 F. Supp. 2d at 662 (same).

The part of the FDIC-R's Motion To Strike relating to the D&O Defendants' sixth affirmative defense is denied.

### 3. The "failure to mitigate" affirmative defense

The D&O Defendants' third affirmative defense is that "Plaintiff has failed to mitigate its alleged injuries or damages, if any, and this failure bars or reduces recovery." The FDIC-R assumes that this affirmative defense is, at least in the first

instance, based on the FDIC-R's own, post-closure conduct, but argues that it is not viable as to either "liability" of the FDIC-R for pre-closure conduct of the OTS or post-closure conduct of the FDIC-R itself. The FDIC-R argues that this defense is, again, barred by the "no duty rule," which it contends *O'Melveny* has not abrogated; by the FTCA's "discretionary function exception"; and by the fact that the only "duties" of the FDIC-R run to the public generally, not to the D&O Defendants.

Likewise, the D&O Defendants reiterate their arguments that the "failure to mitigate" defense is available, because *O'Melveny* has abrogated the "no duty" rule and because of the inapplicability of the "discretionary function exception" from the FTCA to a case brought *by* the FDIC-R under FIRREA. In addition, the D&O Defendants argue that the "duty" to mitigate damages is not, strictly speaking, a "duty" at all, but a disability from recovery of damages for avoidable loss. They also point to the FDIC-R's statutory "duty" to mitigate the losses of a failed financial institution in 12 U.S.C. § 1821(d)(13)(E), which courts have held is entirely consistent with a "duty" to mitigate.

In reply, the FDIC-R argues that, under Iowa law, mitigation is a "duty" of the plaintiff. The FDIC-R also argues that the purported statutory duty to mitigate under § 1821(d)(13)(E) does not run to officers and directors, but only to the insurance fund.

I reiterate my conclusions from the previous section that the uncertainty about the applicability of the "no duty rule" and the "discretionary function exception" from the FTCA in a case involving claims by the FDIC-R make it inappropriate to strike a "failure to mitigate" defense as "insufficient" under Rule 12(f). Thus, the "failure to mitigate" defense will not be stricken on these bases.

I note that the FDIC-R is correct that Iowa courts consistently refer to a "duty" to "mitigate damages." Nevertheless, the source of such a duty is RESTATEMENT (SECOND) OF TORTS § 918, *see Coker v. Abell-Howe Co.*, 491 N.W.2d 143, 148-49

18

(Iowa 1992) (noting that the source of the "unreasonable failure to avoid an injury or mitigate damages" rule, described as the "avoidable consequences doctrine," in the Iowa Comparative Fault Act and the Uniform Comparative Fault Act on which the Iowa Act was modeled, is RESTATEMENT (SECOND) OF TORTS § 918), but that RESTATEMENT provision makes no reference to "duty" or "mitigation." Rather, that provision is cast in the following terms:

> **§ 918 Avoidable Consequences**
>
> (1) Except as stated in Subsection (2), one injured by the tort of another is not entitled to recover damages for any harm that he could have avoided by the use of reasonable effort or expenditure after the commission of the tort.
>
> (2) One is not prevented from recovering damages for a particular harm resulting from a tort if the tortfeasor intended the harm or was aware of it and was recklessly disregardful of it, unless the injured person with knowledge of the danger of the harm intentionally or heedlessly failed to protect his own interests.

RESTATEMENT (SECOND) OF TORTS § 918. Comment *b* then explains,

> *b. Amount by which damages are reduced.* Except when the rule stated in Subsection (2) is applicable, a person who fails to avert the consequences of a tort, which he could do with slight effort is entitled to no damages for the consequences. If harm results because of his careless failure to make substantial efforts or incur expense, the damages for the harm suffered are reduced to the value of the efforts he should have made or the amount of expense he should have incurred, in addition to the harm previously caused.

RESTATEMENT (SECOND) OF TORTS § 918, cmt. *b*. Again, this comment, and the comments generally, are not cast in terms of a "duty" to mitigate, but in terms of failure to mitigate as a bar to or as requiring a reduction of damages.

The Iowa Supreme Court "adopted the Restatement (Third) of Torts in *Thompson [v. Kaczinski*, 774 N.W.2d 829, 835 (Iowa 2009)]." *See Feld v. Borkowski*, 790 N.W.2d 72, 89 (Iowa 2010). Even so, the RESTATEMENT (THIRD) OF TORTS does not abrogate, but cites with approval, RESTATEMENT (SECOND) OF TORTS § 918. *See* RESTATEMENT (THIRD) OF TORTS § 3 (abolishing ameliorative doctrines for defining plaintiff's negligence and defining the plaintiff's negligence according to the same standard for a defendant's negligence), cmt. *b* (explaining that "[n]o rule about mitigation of damages or avoidable consequences categorically forgives a plaintiff for [unreasonable] conduct or categorically excludes recovery," citing RESTATEMENT (SECOND) OF TORTS § 918). Thus, "mitigation" is not a "duty" imposed on a plaintiff by Iowa law, but the "failure to mitigate" is, properly speaking, a basis for reduction of a plaintiff's damages based on the plaintiff's failure to avoid the consequences of another's conduct. Therefore, the FDIC-R's arguments that it cannot be subjected to a "duty" to mitigate or that such a "duty" does not run to the defendants simply do not preclude consideration of a "failure to mitigate" defense as the basis for a reduction of a plaintiff's damages based on the plaintiff's failure to avoid consequences of another's actions.

The part of the FDIC-R's Motion To Strike relating to the D&O Defendants' third affirmative defense is denied.

### 4. The "equitable" affirmative defenses

Finally, the FDIC-R has moved to strike the D&O Defendants' second affirmative defense, which is that "Plaintiff's claims are barred, in whole or in part, by various equitable doctrines, including without limitation, the doctrines of estoppel, laches, unclean hands, and/or waiver." Again, the FDIC-R assumes that this affirmative defense is based on pre-closure conduct of the OTS, which the D&O Defendants seek to attribute or impute to the FDIC-R, and/or post-closure conduct of the FDIC-R itself. The FDIC-R contends that, whatever conduct is at issue, such

equitable defenses cannot be asserted against the FDIC-R and that, in any event, the D&O Defendants would have to prove affirmative misconduct by the OTS or the FDIC-R, which they cannot do.  The FDIC-R cites *United States v. Schroeder*, 86 F.3d 114, 117 (8th Cir. 1996), in support of its contention that the OTS's conduct cannot be attributed or imputed to the FDIC-R.  The FDIC-R also argues that equitable relief based on the OTS's regulatory decisions is barred by the "discretionary function exception" in the FTCA and the lack of any duty of the OTS running to the D&O Defendants pursuant to the "no duty rule."  The FDIC-R also argues that the lack of any facts to support a claim of "affirmative misconduct" by either the OTS or the FDIC-R bars an equitable estoppel defense.

In response, the D&O Defendants argue that these "equitable" defenses are not foreclosed by controlling precedent and raise questions of law and fact that the court ought to hear.  They also argue that the FDIC-R has conceded that an "equitable estoppel" defense is legally sufficient, and that the United States Supreme Court and the Eighth Circuit Court of Appeals recognize that there are factual circumstances in which such a defense can be asserted against the United States or its agencies.  The D&O Defendants argue, again, that striking an "equitable estoppel" defense on the ground that it cannot be proved is inappropriate, where no factual pleading to support the defense is required and no discovery has been done.

In reply, in addition to a great many other things, the FDIC-R reiterates its argument that the D&O Defendants have not pleaded an adequate factual basis that would meet the high burden to prove equitable estoppel against a federal government agency.

I reiterate my conclusions from the previous sections that the uncertainty about the applicability of the "no duty rule" and the "discretionary function exception" from the FTCA in a case involving claims by the FDIC-R make it inappropriate to strike the D&O Defendants' "equitable" defenses as "insufficient" under Rule 12(f).  Thus, the

"equitable" defenses will not be stricken on these bases. I also conclude that the availability of the "equitable" defenses presents "a question of law or fact which the court ought to hear." *See Holt*, 777 F. Supp. 2d at 1169 n.5 (stating Rule 12(f) standards to strike a defense as "insufficient"); *International Motor Contest Ass'n*, 434 F. Supp. 2d at 662 (same). Furthermore, the factual sufficiency of these defenses is better left for resolution after discovery, for example, on a motion for summary judgment addressing whether or not "affirmative misconduct" is required and whether there is such "affirmative conduct" here on which an "equitable estoppel" defense can be based. *See id.* (explaining that the sufficiency of a defense that presents either legal or factual uncertainty that should not be resolved "without the benefit of a full record" should not be stricken pursuant to Rule 12(f)); *International Motor Contest Ass'n*, 434 F. Supp. 2d at 662 (same).

Where I find that the FDIC-R has demonstrated that "equitable" defenses are barred by controlling precedent, and, consequently, may properly be stricken pursuant to Rule 12(f), is in its assertion that the OTS's conduct cannot be attributed or imputed to the FDIC-R. In *United States v. Schroeder*, 86 F.3d 114 (8th Cir. 1996), the Eighth Circuit Court of Appeals recognized that, "[u]nder the 'separate capacities' doctrine, it is well established that the [Resolution Trust Corporation (RTC)], when acting in one capacity, is not liable for claims against the RTC acting in one of its other capacities." 86 F.3d at 117. The court noted that, under the FIRREA, the RTC (like the FDIC) "performs separate and distinct functions in its receiver and corporate capacities." *Id.* The court held that, where the RTC, in one of its capacities, was not a party to the suit by the RTC in another capacity, the RTC in the case could not be subjected to liability arising from the conduct of the RTC in its other capacity. *Id.* Indeed, the D&O Defendants do not address this argument. Instead, they assert that the FDIC-R has assumed that the defense is based, at least in part, on conduct of the OTS, but that the factual basis for the defense is not yet properly at issue. The factual basis for an

"equitable estoppel" defense based on conduct of the OTC cannot change the legal effect of the FDIC-R suing in a separate capacity, *see Schroeder*, 86 F.3d at 117, which precludes the FDIC-R's liability for the conduct of the OTC.

Therefore, the D&O Defendants' second affirmative defense is stricken *only to the extent* that the "equitable" defenses cannot be based on conduct of the OTS, a separate entity, one not a party to this lawsuit, and one that acted in a different capacity than the FDIC-R, acting as receiver for the Bank.

## III. CONCLUSION

Upon the foregoing, the FDIC-R's August 22, 2013, Motion To Strike Certain Affirmative Defenses (docket no. 9) is **granted in part, and denied in part**, as follows:

1.     The Motion is **granted** to the extent that the D&O Defendants' second affirmative defense is stricken *only to the extent* that the "equitable" affirmative defenses cannot be based on conduct of the OTS; and

2.     The Motion is **granted** as to the D&O Defendants' seventh affirmative defense, in its entirety; but

3.     The Motion is **otherwise denied**.

**IT IS SO ORDERED**.

**DATED** this 23rd day of December, 2013.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA