# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF VANTUS BANK, | |
| Plaintiff, | No. C13-4046-MWB |
| vs. | **ORDER** |
| MICHAEL W. DOSLAND, et al., | |
| Defendants. | |

## *I. INTRODUCTION*

This case is before me on defendants' second motion to compel (Doc. No. 24). Plaintiff Federal Deposit Insurance Corporation, as Receiver of Vantus Bank (FDIC-R), has filed a resistance (Doc. No. 34) and defendants have filed a reply (Doc. No. 40). I heard oral arguments by telephone on April 2, 2014. Maureen Roach Tobin and Stephen Marso appeared for plaintiff while David Tank and William Miller appeared for defendants. The motion is now fully submitted.

## *II. BACKGROUND*

On September 4, 2009, the Office of Thrift Supervision (OTS) closed Vantus Bank (Bank) and appointed FDIC-R as its receiver. On May 20, 2013, FDIC-R filed this action against the Bank's former officers and directors and seeks to recover losses "in excess of $58 million." *See* Complaint (Doc. No. 2) at ¶¶ 49(h). In general, FDIC-R alleges that the defendants acted imprudently in deciding to invest the Bank's funds in collateralized debt obligations backed by trust preferred securities (CDOs), starting in

2006. FDIC-R, in its role as receiver for the Bank, asserts state law claims of negligence, gross negligence and breach of fiduciary duty.

The defendants have filed an answer (Doc. No. 8) in which they deny liability and assert various affirmative defenses. On December 23, 2013, Judge Bennett entered an order (Doc. No. 20) that granted, in part, FDIC-R's motion to strike certain affirmative defenses. Among other things, he struck defendants' second affirmative defense, which invokes certain equitable doctrines, "only to the extent that the 'equitable' defenses cannot be based on conduct of the OTS, a separate entity, one not a party to this lawsuit, and one that acted in a different capacity than the FDIC-R, acting as receiver for the Bank." Doc. No. 20 at 23.

### III. SPECIFIC ALLEGATIONS

Because the pending discovery motion raises issues of relevance, it is helpful to review the details of the parties' contentions:

*FDIC-R.* FDIC-R contends that defendants Dosland and Moderski, who allegedly lacked sufficient knowledge and experience, and whom the other defendants had insufficiently vetted, convinced the Bank's board of directors to amend the Bank's investment policy to give them virtual "carte blanche authority" over the Bank's investment policies, procedures, and reviews, with little or no oversight by the board. Dosland and Moderski then allegedly started investing in CDOs, which are described as being high risk, complex securities. FDIC-R alleges that from December 2006 through March 2007, Dosland and Moderski caused the Bank to borrow $50 million through certificates of deposit and advances from the Federal Home Loan Banks (FHLB) to purchase CDOs. FDIC-R further alleges that the Bank eventually borrowed for and purchased more than $65 million of CDOs, constituting more than 120% of the Bank's

2

capital, in violation of limitations in applicable banking regulations and the Bank's own investment policies. FDIC-R then alleges:

> 46. After OTS learned of the Bank's purchases of the [CDOs], it gave notice to the D&O Defendants that at least two of the purchases were in excess of regulatory guidelines. OTS directed the Bank not to purchase any additional [CDOs], and directed the Bank to sell two of the [CDOs] to reduce the Bank's exposure.
>
> 47. [Defendant] Dosland thereafter sent a letter to OTS dated June 29, 2007, in which he advised OTS that the Bank would comply with the OTS directive to reduce the Bank's exposure in two of the [CDOs] . . .
>
> 48. The Bank, with knowledge and consent of the D&O Defendants, never reduced the amount of [CDOs] it held, did not comply with the OTS directive to reduce the Bank's exposure, but instead continued to hold the [CDOs] it had previously purchased.

Complaint (Doc. No. 2) at ¶¶ 46-48.

*Defendants.* Defendants deny that OTS's position concerning the Bank's investments in CDOs was as clear and immediate as FDIC-R contends. They allege that correspondence between the Bank and OTS during the relevant period of time included an ongoing dialogue regarding application of OTS Thrift Bulletin 73a (TB73a). They contend that seven months passed between the date OTS first raised questions about the Bank's CDOs and the date OTS ordered the Bank to submit a "plan to obtain compliance," with the market for CDOs deteriorating substantially during that time. They also point out that an investigative report prepared by the Department of Treasury's Office of Inspector General includes the following narrative:

> . . . Due to miscommunication between the Midwest Region and headquarters staff, it was not until February 2008 (7 months later) that OTS finally informed Vantus that the total investment limit set forth in TB 73a applied to its [CDO] portfolio and directed Vantus to divest the excessive holdings as soon as practical given the current market conditions.

> A regional OTS capital market specialist told us that, based on market data, had Vantus divested its excess [CDOs] in July 2007, shortly after OTS recognized the applicability of TB 73a, the resulting loss would have been limited to less than $2 million.
>
> With that, Vantus would have maintained its well-capitalized status. By 2008, when OTS finally acted to enforce the aggregate concentration limit, there was no longer a market for [CDOs]. OTS granted repeated extensions to Vantus related to both the [loans to one borrower] and aggregate concentration limit directives. Ultimately, Vantus never divested the investments.
>
> Given the timing of the collapse of the securitization market that began in mid-2007, we believe that more timely and forceful action on the part of OTS to address Vantus's [CDO] concentration would have given the thrift a better chance of survival and may have prevented a loss to the Deposit Insurance Fund.

Doc. No. 24-1 at 5. Defendants argue that OTS's actions, and its view of the situation, during this period of time are relevant to the question of whether defendants violated their duties of care to the Bank.

## IV.  THE MOTION

On October 15, 2013, defendants served interrogatories and requests for production. The current motion addresses FDIC-R's position as to documents in the possession of OTS.[1] FDIC-R contends that those documents are, in large part, undiscoverable because they have no relevance to any claims or defenses in this case. FDIC-R relies, in large part, on Judge Bennett's order (Doc. No. 20) striking defendants' equitable defenses to the extent that those defenses are based on the conduct of OTS. FDIC-R has agreed to produce any OTS documents in its possession to which the

---

[1] More accurately, the documents currently in dispute are in the possession of the Office of the Comptroller of the Currency (OCC), which merged with and became the successor to OTS in 2011. For simplicity, I will refer to the documents as "OTS documents."

defendants were privy during the relevant period of time (such as correspondence between OTS and the Bank). However, FDIC-R contends that any internal OTS documents about the Bank to which the defendants were not privy have no possible relevance and, therefore, are not relevant. Finally, FDIC-R notes that it is a separate entity from either OTS or OCC and argues that it cannot be responsible for producing any OTS documents other than those that are in its own possession.

Defendants argue that the responsive OTS documents have sufficient, potential relevance to be discoverable in this case. They contend that the early, partial demise of their equitable affirmative defenses does not have the broad discovery impact claimed by FDIC-R, as internal OTS records may still provide relevant context for FDIC-R's claims that the defendants acted imprudently. They note, for example, that OTS's documents may include memorializations of communications between OTS employees and the Bank concerning CDOs. Moreover, they suggest that if internal documents reflect uncertainty within OTS as to whether the Bank's investments in CDOs was improper, such information would be relevant to the issue of whether the defendants breached the applicable duties of care by purchasing and holding those investments. Finally, defendants point out that FDIC-R is entitled, by statute[2], to obtain documents from other agencies, including OTS and OCC. According to defendants, this means FDIC-R cannot rely on a "we don't have them" response with regard to OTS materials that are not currently in FDIC-R's possession.

## V. DISCUSSION

As noted above, the two disputed questions posed by the pending motion are (1) are internal OTS documents relevant and, if so, (2) does FDIC-R have any obligation to obtain and produce them? I will address those questions in that order.

---

[2] *See* 12 U.S.C. § 1821(o), to be discussed further, *infra*.

5

## A. *Relevance*

The rules of procedure concerning discovery in a civil action "are to be broadly and liberally construed in order to fulfill discovery's purposes of providing both parties with 'information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote settlement.'" *Marook v. State Farm Mut. Auto. Ins. Co.*, 259 F.R.D. 388, 394 (N.D. Iowa 2009) (quoting *Rolscreen Co. v. Pella Prods.*, 145 F.R.D. 92, 94 (S.D. Iowa 1992)). Thus, a party generally may obtain discovery regarding any nonprivileged matter that is relevant to any claim or defense. *See* Fed. R. Civ. P. 26(b)(1). The scope of permissible discovery is broader than the scope of admissibility. *See, e.g., Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). Nonetheless, there must be at least a "threshold showing of relevance" before parties "are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Id.* A party resisting discovery on the basis of relevance bears the burden of establishing the lack of relevance. *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000). Finally, discovery must not only be relevant, it must also be proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(2)(C).

Applying these principles, and having fully considered the parties' arguments, I find FDIC-R has failed to meet its burden of showing that the requested internal OTS documents have no possible relevance to this case. While OTS had no role in the Bank's decisions to purchase CDOs, it learned of these investments within a matter of months and began an inquiry about them. *See, e.g.,* Complaint (Doc. No. 2) ¶¶ 38-46. As defendants point out, FDIC-R referenced OTS roughly 30 times in the course of making allegations against defendants in its complaint. FDIC has identified former OTS employees as potential witnesses and has described various OTS documents as being relevant to its claims.

Moreover, defendants have presented information suggesting that OTS did not immediately order divesture but, instead, allowed the Bank to continue holding CDOs for a period of several months. Defendants have also presented information suggesting that OTS, itself, may have been uncertain about the application of TB73a to the Bank's CDO portfolio. Finally, defendants indicate that there were ongoing communications between Bank officials and OTS representatives during the relevant period of time.

This is not a strict liability case. FDIC-R must prove that the defendants' conduct violated an applicable standard of care.[3] It is within the realm of reasonable possibility that internal OTS documents may contain information that is relevant to the defendants' denials that any such violations occurred. Thus, and despite the fact that Judge Bennett's prior order limits defendants' ability to rely on OTS's actions as an affirmative defense, I cannot find that the internal OTS documents are so plainly irrelevant to FDIC-R's claims as to deprive defendants of the opportunity to obtain them.

I am mindful that this holding may conflict with that of *FDIC v. Killinger*, No. C11-459 MJP, 2011 WL 4440410 (W.D. Wash. Sept. 21, 2011). In *Killinger*, defendants facing similar causes of action in the aftermath of a bank failure sought to obtain internal OTS documents. The court held that the defendants were entitled to obtain only communications that had been shared with the failed bank, not other internal documents. *Id*. at *1-2. The court reasoned that internal communications that had not been shared with the bank were irrelevant to any of the claims presented in that case. *Id*. at *1. The court's opinion, while describing the plaintiff's legal causes of action, provides no details concerning the specific allegations of negligence. For example, did the bank's officers and directors make allegedly-careless loans, or were they alleged (like the defendants here) to have violated duties of care regarding the bank's investments?

---

[3] *See, e.g.,* Complaint (Doc. No. 2) at ¶¶ 53, 63 (setting forth the allegedly-applicable standard of care).

Because it is unclear if the claims presented in *Killinger* are analogous to those in this case, I cannot find that the holding in *Killinger* is entirely on point. Even if it is, however, I would not follow it. The defendants in this case are being sued to recover alleged losses in excess of $58 million. They are entitled to defend themselves. They have provided a plausible explanation of why internal OTS documents may contain relevant information. FDIC-R has not met its burden of showing that those documents are so plainly irrelevant as to be undiscoverable.

### B. *FDIC-R's Obligation To Obtain OTS Documents*

After FDIC-R took the position that if defendants want documents from other agencies they will need to serve subpoenas on those agencies, defendants directed FDIC-R's attention to the following statute:

> **(o) Supervisory records**
>
> In addition to the requirements of section 1817 (a)(2) of this title to provide to the [FDIC] copies of reports of examination and reports of condition, whenever the [FDIC] has been appointed as receiver for an insured depository institution, the appropriate Federal banking agency shall make available all supervisory records to the receiver which may be used by the receiver in any manner the receiver determines to be appropriate.

12 U.S.C. § 1821(o). FDIC-R has now softened its position a bit, stating that if OTS documents are discoverable, it will send a letter to OCC requesting those documents. However, FDIC-R contends that it has no further obligation to obtain OTS documents.

Federal Rule of Civil Procedure 34(a) imposes an obligation on each party to produce requested materials that are within its "possession, custody, or control." Materials are "deemed to be within the 'possession, custody or control' for purposes of Rule 34 if the party has actual possession, custody or control, or has the legal right to obtain the documents on demand." *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D.

633, 636 (D. Minn. 2000) (emphasis added) (quoting *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995)). For purposes of Rule 34, "[a] party does not need to have legal ownership or actual possession of documents, 'rather documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action.'" *New Alliance Bean and Grain Co. v. Anderson Commodities, Inc.*, No. 8:12-cv-197, 2013 WL 1869832, at *3 (D. Neb. May 2, 2013) (quoting *In re Hallmark Capital Corp.*, 534 F. Supp. 2d 981, 982 (D. Minn. 2008)); *accord Wells v. FedEx Ground Package Sys., Inc.*, No. 4:10-cv-2080-JAR, 2012 WL 4513860, at *1 (E.D. Mo. Oct. 1, 2012); *Comas v Schaefer*, No. 10-04085-CV-C-FJG, 2010 WL 2927280, at *2 (W.D. Mo. July 21, 2010).

Pursuant to the plain language of Section 1821(o), the FDIC-R has the "legal right to obtain the [OTS] documents on demand." *See also RTC v. Deloitte & Touche*, 145 F.R.D. 108, 110 (D. Colo. 1992) (holding that the statute gave FDIC-R's predecessor the "absolute and unrestricted ability to obtain OTS documents on demand" and that such materials were therefore within its "possession, custody, or control"). FDIC-R does not argue otherwise. Instead, it simply suggests that it can fulfill its obligation under Rule 34 by simply sending a request letter to OCC and forwarding whatever documents OCC chooses to supply in response. Defendants disagree.

For the most part, I find the parties' dispute about the extent of FDIC-R's obligation under Rule 34 to be premature. By this order, FDIC-R will be compelled to produce responsive OTS documents, whether they are currently in the possession of FDIC-R or OCC. The inter-agency procedures under which FDIC-R obtains materials from OCC pursuant to Section 1821(o) are not this court's concern. I assume this will not be the first opportunity for FDIC-R to enforce its statutory right to receive documents from OCC. If simply sending a letter can get the job done, so be it.

But the job does need to get done, one way or the other. FDIC-R shall produce

9

the responsive OTS documents – from its own files and from OCC's files – on or before **May 16, 2014**. If FDIC-R ultimately takes the position that it has tried to obtain responsive OTS documents from OCC and has been unable to do so, it should be prepared to exhaustively document the steps it took to comply with this order.[4]

## VI. CONCLUSION

Defendants' second motion to compel (Doc. No. 24) is **granted**, as follows:

a. FDIC-R shall produce all responsive OTS documents – from its own files and from OCC's files – on or before **May 16, 2014**. If FDIC-R contends in good faith that any such documents are protected from disclosure by the attorney-client privilege and/or the work product doctrine, it may withhold those documents and describe them in a detailed privilege log pursuant to Federal Rule of Civil Procedure 26(b)(5)(A).

b. Defendants' request for an award of fees and expenses in connection with their motion is **denied**.

**IT IS SO ORDERED.**

**DATED** this 4th day of April, 2014.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE

---

[4] Defense counsel suggested during the hearing that FDIC-R's efforts to obtain the requested documents should be measured against the efforts it would make if it believed the documents in OCC's possession would be helpful to its own case. In other words, if FDIC-R believed there to be a "smoking gun" in OCC's files, it would likely do more than send a letter to OCC and hope for a response. Again, while I find the dispute over the extent of FDIC-R's efforts to be premature, I generally agree with defense counsel's suggestion.