# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of Vantus Bank,

Plaintiff,

vs.

MICHAEL W. DOSLAND, MICHAEL S. MODERSKI, ARLENE T. CURRY, BARRY E. BACKHAUS, GARY L. EVANS, RONALD A. JORGENSON, JON G. CLEGHORN, and CHARLES D. TERLOUW,

Defendants.

No. C 13-4046-MWB

**MEMORANDUM OPINION AND ORDER REGARDING THIRD-PARTY PLAINTIFFS' MOTION FOR JURISDICTIONAL DISCOVERY**

MICHAEL W. DOSLAND, MICHAEL S. MODERSKI, ARLENE T. CURRY, BARRY E. BACKHAUS, GARY L. EVANS, RONALD A. JORGENSON, JON G. CLEGHORN, and CHARLES D. TERLOUW,

Third-Party Plaintiffs,

vs.

THE UNITED STATES OF AMERICA,

Third-Party Defendant.

_____

**TABLE OF CONTENTS**

I.    INTRODUCTION..................................................................... 2
      A.    Background................................................................. 2
      B.    Arguments Of The Parties ........................................... 4
II.   LEGAL ANALYSIS ................................................................. 9
      A.    The "Discretionary Function Exception"....................... 9
      B.    Standards For Jurisdictional Discovery ...................... 11
            1.    Discretion and factors....................................... 11
            2.    Jurisdictional discovery in FTCA "discretionary function" cases ......................................... 13
      C.    Application Of The Standards................................... 18
III.  CONCLUSION ...................................................................... 23

## I.    INTRODUCTION

### A.    Background

The Federal Deposit Insurance Corporation, as Receiver for Vantus Bank, (FDIC-R) filed this action, pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1811 *et seq.*, against the former officers and directors of Vantus Bank in Sioux City, Iowa, asserting claims of gross negligence, negligence, and breach of fiduciary duty. The FDIC-R's claims are based primarily on its allegations that the defendants caused Vantus Bank to use $65 million— 120 percent of its core capital—to purchase fifteen high risk collaterized debt obligations backed by Trust Preferred Securities (CDO-TruPS) without due diligence and in

disregard and ignorance of regulatory guidance about the risks of and limits on purchases of such securities.

On May 27, 2014, the officers and directors filed their Third-Party Complaint and Jury Demand (docket no. 54), asserting a claim pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.* In their Third-Party Complaint, the officers and directors (hereafter, the third-party plaintiffs) allege that the United States acting as the Office of Thrift Supervision (OTS) owed duties to Vantus Bank, its stockholders, members, accountholders, depositors, officers, directors, the FDIC, and the Deposit Insurance Fund. They allege, further, that the OTS negligently violated that duty by failing to analyze accurately Vantus Bank's investments and to take more timely action to remedy Vantus Bank's alleged investment violations. The third-party plaintiffs allege that, because of the OTS's negligence, the OTS should be apportioned a share of fault and be liable for contribution, pursuant to IOWA CODE CH. 668, for any damages sought by the FDIC-R.

In response, on July 15, 2014, the OTS filed a Motion To Dismiss (docket no. 63), seeking dismissal of the Third-Party Complaint for at least two independent reasons: (1) this court lacks jurisdiction, because the "discretionary function exception" to the FTCA applies in this case; and (2) even if this court has jurisdiction, the Third-Party Complaint fails to state a claim upon which relief can be granted, because the regulators and examiners owed no duty to the failed bank. Litigation of that motion was put on hiatus when I entered an Order (docket no. 70), on August 1, 2014. In that Order, I granted the third-party plaintiffs to and including August 8, 2014, to file any motion for jurisdictional discovery and stated that the deadline for their response to the OTS's Motion To Dismiss would be reset either upon denial of their anticipated motion for jurisdictional discovery or upon the completion of any jurisdictional discovery allowed by the court.

The third-party plaintiffs' Motion For Jurisdictional Discovery (docket no. 71), followed in due course, on August 8, 2014. On August 19, 2014, the OTS filed its Response To The Third-Party Plaintiffs' Motion For Jurisdictional Discovery (docket no. 77), opposing any such discovery. On August 22, 2014, the FDIC-R filed its separate Resistance To Defendants' Motion For Jurisdictional Discovery (docket no. 78), likewise opposing any such discovery. On September 8, 2014, the third-party plaintiffs filed their Reply In Support Of Motion For Jurisdictional Discovery (docket no. 85), responding to both the OTS's and the FDIC-R's resistances. In an Order (docket no. 87), filed September 9, 2014, I took the unusual step of allowing the OTS to file a surreply to address what it argued were new legal arguments and new facts in the third-party plaintiffs' Reply, primarily because the OTS's request to file a surreply was unopposed. Thus, the OTS's Surreply (docket no. 88) was filed September 9, 2014. With that filing, the briefing of the question of jurisdictional discovery was complete.

The third-party plaintiffs requested oral arguments on their Motion For Jurisdictional Discovery. The OTS stated in its Response that it neither resisted nor joined in that request, but it did opine that the nature of the issues presented makes oral arguments unnecessary in this instance. I agree with the OTS and note, further, that my crowded schedule has not permitted the timely scheduling of oral arguments. Therefore, I deny the third-party plaintiffs' request for oral arguments, and I will consider their Motion For Jurisdictional Discovery fully submitted on the written submissions.

### B.    Arguments Of The Parties

In their Motion For Jurisdictional Discovery, the third-party plaintiffs seek discovery to determine the existence of a statute, regulation, or policy specifically prescribing a course of action or a mandatory timeline for the OTS to act with respect to Vantus Bank. They point out that the record shows that the OTS first raised concerns

regarding certain of Vantus Bank's investments in a letter dated June 26, 2007, but never "ordered" divestment of those assets; indeed, they argue, the OTS initially did nothing. It was not until February 13, 2008, they contend, that the OTS requested a "plan to obtain compliance" by March 15, 2008. They contend that the OTS's delay had a significant effect on the damages claimed by the FDIC-R, because of the loss of liquidity in the securities at issue during the seven months that the OTS did nothing.

The third-party plaintiffs recognize that this court lacks jurisdiction under the FTCA over claims arising from regulatory actions that fall within the "discretionary function exception." The third-part plaintiffs argue that they have taken substantial steps to try to obtain discovery demonstrating that the OTS's actions do not fall within this exception, despite attempts by the FDIC-R to block such discovery and the FDIC-R's delays in producing such discovery once it was ordered to do so. They argue that, because of the FDIC-R's tactics and delays, they were forced to file their Third-Party Complaint by an existing deadline to add parties, based on allegations of their beliefs concerning OTS's failure to comply with mandatory requirements, rather than file a request for a further extension of the deadline to add parties until after the FDIC-R had fully complied with their discovery requests. They now assert that the FDIC-R and the OTS are attempting to place them in a "Catch-22," by asserting that they have no factual basis for their claims that the OTS violated mandatory requirements, while attempting to prevent them from discovering any such factual basis. They contend that, while the FDIC-R and the OTS have simply asserted that there are no mandatory standards for the OTS's conduct at issue here, they "believe that mandatory standards or policies likely governed the OTS's conduct with respect to Vantus, and that they should be allowed to conduct limited jurisdictional discovery to find them." Third-Party Plaintiffs' Brief (docket no. 74), 11-12.

The third-party plaintiffs argue that the question of whether or not to allow jurisdictional discovery is a discretionary one with the court. They argue, further, that various courts have allowed jurisdictional discovery in FTCA cases in which the "discretionary function exception" was at issue. The jurisdictional discovery that they seek is the following: four categories of documents; a Rule 30(b)(6) deposition on five topics; and the deposition of a current employee of the Office of the Comptroller of the Currency (OCC), Mr. Anthony Jardieu, whom they believe to be a person involved in the examination of Vantus Bank during the relevant period.[1]

In its Response, the OTS acknowledges that it has put the "discretionary function exception" to FTCA jurisdiction directly at issue in its Motion To Dismiss the Third-Party Complaint against it, because the Third-Party Complaint fails to reveal any potential that the regulators and examiners failed a specific non-discretionary mandate.[2] The OTS argues that the third-party plaintiffs are simply trying to delay the inevitable dismissal of their Third-Party Complaint by seeking additional discovery, while failing to present anything but a speculative hypothesis that there may be some evidence somewhere of non-discretionary standards or policies that governed the OTS's conduct with respect to Vantus Bank. In other words, they contend, the third-party plaintiffs seek a "fishing expedition" in the guise of "jurisdictional discovery."

More specifically, the OTS argues that the third-party plaintiffs fail to satisfy pertinent factors that courts consider when determining whether or not to allow jurisdictional discovery. Specifically, they argue that the third-party plaintiffs have not

---

[1] I will return to the question of the scope of permissible jurisdictional discovery, if I first find that jurisdictional discovery should be allowed at all.

[2] As noted, above, the OTS also argues that the Third-Party Complaint should be dismissed on the independent ground that the regulators and examiners owed no actionable duty sufficient to give rise to tort liability.

demonstrated that the requested discovery could reasonably be expected to reveal any facts giving rise to jurisdiction, because there is no reasonable probability that discovery will lead to some type of mandatory policy upon which this court could find that it possesses jurisdiction. They argue that the third-party plaintiffs' "belief" that there may be such evidence should carry no weight. The OTS argues that this failing is particularly clear where the third-party plaintiffs have already managed to obtain, through what the OTS describes as "creative discovery" from the FDIC-R, hundreds of thousands of pages of pertinent documents and emails from OTS files. Thus, the OTS argues, if there is any documentary support for a specific mandate, the third-party plaintiffs already have access to it, but they have failed to turn up anything. The OTS points out that the third-party plaintiffs also already have access to the Office of Inspector General, Department of the Treasury Audit Report, SAFETY AND SOUNDNESS: Material Loss Review of Vantus Bank, but that they have failed to find any support for an alleged violation of a purportedly mandatory standard in that report.

The OTS argues that, whether its challenge to jurisdiction is "facial" or "factual," no jurisdictional discovery should be allowed, because the third-party plaintiffs have not presented anything but bare allegations of their "beliefs" to support their assertion of jurisdiction over their third-party claim. The OTS also contends that, if the third-party plaintiffs are entitled to some jurisdictional discovery, their present requests are overbroad and unnecessarily burdensome.

The FDIC-R's separate Resistance covers much the same ground as the OTS's. The FDIC-R specifically challenges the third-party plaintiffs' characterization of their alleged difficulties in obtaining pertinent discovery from the FDIC-R. The FDIC-R also points out, however, that the production of OTS documents from the FDIC-R is now complete, yet the third-party plaintiffs still have not identified any OTS documents that support their claim against the OTS. The FDIC-R also argues that jurisdictional

discovery would improperly delay resolution of this case, particularly in light of the inherently speculative nature of the requested discovery.

In their Reply, the third-party plaintiffs contend that the OTS has relied on a standard for determining whether to allow a non-movant to conduct discovery prior to responding to a motion for summary judgment. They contend that the proper standard for jurisdictional discovery is discretion of the court. They then lay out a timeline of the OTS's conduct with regard to Vantus Bank, which they assert is based on recently disclosed OTS materials. They argue that this timeline demonstrates that facts exist suggesting that mandatory standards were violated by the OTS, because the timeline demonstrates that the OTS failed to act in a timely manner in response to a request for regulatory interpretation and that failure, in turn, generates a reasonable belief that the OTS violated a mandatory standard of conduct. They also contend that the sources of "mandatory standards" go beyond statutes and regulations and may include informal policy statements. Thus, they argue that a case-by-case review of applicable standards, beyond what appears in the public domain, is required. They also argue that the discovery that they now seek goes beyond the scope of what the FDIC-R has already—albeit belatedly—produced.

The last salvo in the briefing of this issue is the OTS's Surreply. The OTS argues that the "new materials" on which the third-party plaintiffs now rely simply do not provide any articulable reason for their belief that there are mandatory standards that governed the OTS's conduct with regard to Vantus Bank. Indeed, the OTS argues that the "new materials" fail to create any reasonable expectation that even more discovery will enable the third-party plaintiffs to avoid the effect of the "discretionary function exception." The OTS also argues that the third-party plaintiffs have failed to cite a single case contrary to the cases cited by the OTS holding that the "discretionary function exception" bars negligence actions against the United States based on the alleged

negligence of bank regulators. The OTS asserts that no additional discovery is appropriate, in light of the failure of the massive discovery so far to provide any support for the third-party plaintiffs' claim. The OTS also states, however, that if the third-party plaintiffs are contending that they have not had enough time to review all of the materials already provided, the OTS will agree to another reasonable extension of time to allow them to review the materials already in their possession. The OTS also rejects the third-party plaintiffs' suggestion that the OTS's failure to file an affidavit averring that there are no mandatory regulations or policies to be found suggests that such regulations exist. Rather, the OTS argues that it is simply not required to file such an affidavit where the third-party plaintiffs have so completely failed to carry their burden to obtain jurisdictional discovery.

## II. LEGAL ANALYSIS

### A. The "Discretionary Function Exception"

I believe that it would be helpful to look briefly at the "discretionary function exception" to jurisdiction in FTCA cases to put in context the questions of whether and to what extent jurisdictional discovery might be appropriate in this case. Fortunately, in *Herden v. United States*, 726 F.3d 1042 (8th Cir. 2013), the Eighth Circuit Court of Appeals provided a succinct explanation of the "discretionary function exception," and its role in a court's subject matter jurisdiction over FTCA claims, as follows:

> Pursuant to the FTCA, the federal government waives sovereign immunity and allows itself to be sued
>
>> for injury or loss of property … caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the

> claimant in accordance with the law of the place where
> the act or omission occurred.

28 U.S.C. § 1346(b)(1). This broad waiver does not, however, apply to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This exception is referred to as the discretionary function exception. *See, e.g., Walters v. United States*, 474 F.3d 1137, 1139 (8th Cir.2007). "If the FTCA's discretionary function exception applies, it is a jurisdictional bar to suit." *Id.*

A well-established legal framework applies to determine whether the discretionary function exception bars a party's suit under the FTCA. The first inquiry is whether the challenged conduct or omission is truly discretionary, that is, whether it involves an element of judgment or choice instead of being "controlled by mandatory statutes or regulations." *United States v. Gaubert*, 499 U.S. 315, 328, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) (citing *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)). If the challenged conduct is not discretionary, the exception does not apply.

If the challenged action is discretionary, however, the next inquiry is whether the government employee's judgment or choice was "based on considerations of social, economic, and political policy." *Layton v. United States*, 984 F.2d 1496, 1499 (8th Cir.1993) (citing *Berkovitz*, 486 U.S. at 536–37, 108 S.Ct. 1954). Not all discretionary decisions are immune from suit because the Congressional purpose of the exception is "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy[.]" *United States v. Varig Airlines*, 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). However,

> as long as a discretionary decision is "susceptible to policy analysis," *Gaubert*, 499 U.S. at 325, 111 S.Ct. 1267, the exception applies "whether or not [a] defendant in fact engaged in conscious policy-balancing." *C.R.S. ex rel. D.B.S. v. United States*, 11 F.3d 791, 801 (8th Cir.1993).

*Herden*, 726 F.3d at 1046-47. In short, the "discretionary function exception" provides an appropriate basis for a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, *id.* at 1046, such as the one filed by the OTS in response to the Third-Party Complaint.

## B.     Standards For Jurisdictional Discovery

### 1.     Discretion and factors

The third-party plaintiffs are correct that the Eighth Circuit Court of Appeals reviews a district court's ruling on a motion for jurisdictional discovery for abuse of discretion. *See, e.g., Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 598 (8th Cir. 2011). That does not mean, however, that the Eighth Circuit Court of Appeals has provided no further guidance to the district courts on the exercise of their discretion in deciding whether or not to allow jurisdictional discovery.

First, the Eighth Circuit Court of Appeals has stated that jurisdictional discovery is only warranted if the facts necessary to resolve the jurisdictional inquiry are either unknown or can be genuinely disputed. *Viasystems, Inc.*, 646 F.3d at 598. Second, the Eighth Circuit Courts of Appeals has identified several factors that are relevant to the determination of whether or not to allow jurisdictional discovery:

> Courts look to decisions under Rule 56 for guidance in determining whether to allow discovery on jurisdictional facts. *See Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir.2004) ("Although a motion to dismiss for lack of jurisdiction cannot be converted into a Rule 56 motion, a court may nonetheless look to Rule 56(f) [now Rule 56(d)] for

11

> guidance in considering the need for discovery on
> jurisdictional facts.") (citing *Kamen v. Am. Tel. & Tel. Co.*,
> 791 F.2d 1006, 1011 (2d Cir.1986); *Exch. Nat'l Bank v.
> Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir.1976)). To
> request discovery under Rule 56(f) [now Rule 56(d)], a party
> must file an affidavit describing: (1) what facts are sought and
> how they are to be obtained; (2) how these facts are
> reasonably expected to raise a genuine issue of material fact;
> (3) what efforts the affiant has made to obtain them; and
> (4) why the affiant's efforts were unsuccessful. *Id.* (citing
> *Hudson River Sloop Clearwater, Inc. v. Dep't of the Navy*,
> 891 F.2d 414, 422 (2d Cir.1989)).

*Johnson v. United States*, 534 F.3d 958, 965 (8th Cir. 2008) (FTCA case). Thus, contrary to the third-party plaintiffs' assertion, the OTS properly framed its arguments concerning jurisdictional discovery in terms of these "Rule 56(d)" factors.

The Eighth Circuit Court of Appeals has also made clear that a bare assertion that jurisdictional discovery "would likely" reveal facts necessary to support jurisdiction is "entirely speculative, and '[w]hen a plaintiff offers only speculation or conclusory assertions about [the existence of facts demonstrating jurisdiction,] a court is within its discretion in denying jurisdictional discovery.'" *Viasystems, Inc.*, 646 F.3d at 598 (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1074 n.1 (8th Cir. 2004)); *and compare Steinbuch v. Cutler*, 518 F.3d 580, 589 (8th Cir. 2008) (holding that, where the plaintiff offered "some documentary evidence, and not merely speculations or conclusory allegations," as to jurisdictional facts, the district court abused its discretion in denying jurisdictional discovery). To put this requirement in terms of a positive burden, the party seeking jurisdictional discovery must explain how the evidence it seeks will raise a genuine issue of material fact relevant to subject matter jurisdiction. *Johnson*, 534 F.3d at 965 (FTCA case); *accord Freeman v. United States*, 556 F.3d 326, 342 (5th Cir. 2009) (holding that FTCA claimants are "not entitled to jurisdictional discovery if

the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion.").

### 2. Jurisdictional discovery in FTCA "discretionary function" cases

More guidance may be gleaned from examination of a few decisions of the Circuit Courts of Appeals that have considered when jurisdictional discovery is appropriate to allow a FTCA claimant to overcome the jurisdictional bar presented by the "discretionary function exception." A particularly apt example is the decision of the Third Circuit Court of Appeals in *Baer v. United States*, 722 F.3d 168 (3d Cir. 2013), which, like the present case, addressed jurisdictional discovery of mandatory requirements for agency action to support a FTCA claim that a regulatory agency had acted negligently in failing to uncover and terminate misconduct of a regulated entity. Specifically, the Third Circuit Court of Appeals heard an appeal by customers from dismissal for lack of subject matter jurisdiction over their FTCA claim "to recover damages for injuries resulting from the failure of the Securities and Exchange Commission ('SEC') to uncover and terminate [Bernard] Madoff's Ponzi scheme in a timely manner." *Baer*, 722 F.3d at 171. The court explained that FTCA claimants "'bear[ ] the burden of demonstrating that [their] claims fall within the scope of the FTCA's waiver of government immunity,' while the government 'has the burden of proving the applicability of the discretionary function exception.'" *Id*. at 172 (quoting *Merando v. United States*, 517 F.3d 160, 164 (3d Cir. 2008)).

As to the question of jurisdictional discovery relating to the "discretionary function exception," the Third Circuit Court of Appeals held as follows:

> Here, the District Court did not abuse its discretion when it denied [the customers'] request to conduct discovery regarding the existence of additional SEC internal procedures. [The customers] had and relied on the SEC's detailed 457–page [Office of the Inspector General (OIG)] Report, which

includes a discussion of numerous SEC procedures and policies. The SEC subsequently issued a follow-up report that examines the Office of Compliance Inspections and Examinations' "modules, policies, procedures and guidance associated with the conduct of its examinations." SEC OIG Rpt. No. 468, Review and Analysis of OCIE Examinations of Bernard L. Madoff Investment Securities, LLC, at 2 (Sept. 29, 2009). The SEC's Enforcement Manual is available online. Despite these materials, [the customers] have been unable to identify any regulation, policy, or procedure that would overcome application of the discretionary function exception. [The customers] cannot establish a "reasonable expectation that discovery will reveal evidence of" any such policy. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

*Baer*, 722 F.3d at 176-77. Thus, where extensive public documents give no hint of the existence of internal policies or procedures, jurisdictional discovery is properly denied. This may be particularly true where reports of governmental investigations—executive or congressional—of the agency action in question are already publicly available. *Id.* (finding no jurisdictional discovery was appropriate in light of reports of an executive branch investigation); *see also Freeman v. United States*, 556 F.3d 326, 342 and n.16 (5th Cir. 2009) ("While we need not decide whether the sources of a nondiscretionary federal directive, for the purposes of the discretionary function exception, will always be in the public domain, we conclude that in this case plaintiffs' allegations are based on statutes, regulations, and other authorities that are publicly available," and "[t]his is particularly true here, where plaintiffs have relied on numerous congressional investigations regarding the government's response to Hurricane Katrina.").

Less factually similar, but nevertheless instructive, is the decision of the Fifth Circuit Court of Appeals in *Davila v. United States*, 713 F.3d 248 (5th Cir. 2013). In that case, drivers appealed the district court's dismissal, *inter alia*, of their FTCA claim

that federal agents (U.S. Border Patrol agents and National Park Service rangers) "acted negligently in issuing a Be–On–The–Lookout ('BOLO') Alert for Davila's vehicle." *Davila*, 713 F.3d at 253. The court addressed the plaintiffs' assertion that the district court had improperly denied limited discovery to support their claim that the "discretionary function exception" was inapplicable to the issuance of the BOLO. *Id*. at 263. The court affirmed denial of jurisdictional discovery, as follows:

> As the party opposing dismissal and requesting discovery, the plaintiffs bear the burden of demonstrating the necessity of discovery. *See Freeman v. United States*, 556 F.3d 326, 341–42 (5th Cir.2009). They are "not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion." *Id*. at 342. *Moreover, the burden is greater where, as in the present case, "the party seeking discovery is attempting to disprove the applicability of an immunity-derived bar to suit because immunity is intended to shield the defendant from the burdens of defending the suit, including the burdens of discovery." Id.* The plaintiffs have not met this burden. They alleged only that there may be a government policy governing BOLOs, and alleged no well-pleaded facts or evidence to refute the government's assertion to the district court that no such policy exists. As such, we cannot conclude that the district court abused its discretion in denying the plaintiffs' request.

*Davila*, 713 F.3d at 264 (emphasis added). What is particularly instructive here is that the Fifth Circuit Court of Appeals concluded that a "greater" burden to obtain jurisdictional discovery is applicable where, as here, the discovery is sought to attempt to overcome an immunity-derived bar to jurisdiction. *Accord Freeeman*, 556 F.3d at 342 (stating the same "greater burden" in such cases).

In contrast to these FTCA cases denying jurisdictional discovery on the "discretionary function exception" to jurisdiction over FTCA claims, the third-party

plaintiffs here point to the decision of the District of Columbia Circuit Court of Appeals in *Loughlin v. United States*, 393 F.3d 155 (D.C. Cir. 2004). In that case, the Loughlins brought their FTCA action for "the Government's negligence in (1) burying dangerous munitions and toxic chemicals on property leased from [American University (AU)] in the Spring Valley area of the District of Columbia around the time of World War I, (2) failing to issue warnings about the buried munitions and chemicals and the resulting dangerous conditions, and (3) failing to investigate and remedy the hazards and contamination it caused." *Loughlin*, 393 F.3d at 158. The district court had "allowed the parties jurisdictional discovery limited to the existence of rules, regulations, or directives that might pertain to the first part of the discretionary function exception," *id.* at 161, which asks whether there are any such mandatory policies, regulations, or directives, but had denied discovery as to the second part, which asks whether, in the absence of specific directives, "the challenged discretionary act or omission is 'of the nature and quality that Congress intended to shield from tort liability.'" *Id.* at 163 (explaining the two steps or prongs of the "discretionary function exception" analysis (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 813 (1984))). The District of Columbia Circuit Court of Appeals held that the district court had erred by limiting jurisdictional discovery to the first prong. *Id.* at 167. The court explained in *Loughlin* that, where facts *going to the second prong*— that is, to the nature of the decision—are necessary to establish jurisdiction, plaintiffs should also be afforded the opportunity for discovery of those facts, as well as for discovery of mandatory policies, procedures, or regulations, prior to a ruling on a motion to dismiss for lack of subject matter jurisdiction. *Id.*

It is readily apparent, however, that *Loughlin* did not involve the question presented here, which is when sufficient showing has been made for jurisdictional discovery of mandatory policies, procedures, or regulations—that is, "prong one"

evidence. No one in *Loughlin* challenged the district court's decision allowing such discovery. The appellate court in *Loughlin* also concluded that, despite the district court's error in restricting discovery to "prong one" evidence, the claimants' jurisdictional discovery had provided information relevant to "prong two." *Id.* at 167-68. The appellate court also concluded that the claimants had made insufficient showing for *additional* discovery, because "they ha[d] failed to particularize their requests," that is, "to articulate precisely what information, pertaining to the nature of the decision whether to warn [of the presence of the munitions and contaminants] they ha[d] been denied." *Id.* at 168. Thus, *Loughlin* also stands for the proposition that the party requesting jurisdictional discovery must sufficiently articulate or identify the information sought and demonstrate that such information exists in addition to what is already available to the claimant.

Indeed, the third-party plaintiffs might better have relied on *Ignatiev v. United States*, 238 F.3d 464 (D.C. Cir. 2001), in which the same court had held that, without jurisdictional discovery, the FTCA claimants "ha[d] no way to know what mandatory policies may bind the Secret Service." 238 F.3d at 467. The appellate court reversed the district court's dismissal for lack of subject matter jurisdiction, because the district court had erred in not allowing discovery prior to the dismissal. *Id.* In that case, the appellate court expressly recognized that "internal guidelines can be an actionable source of a mandatory obligation under the FTCA," and that, at least in that case, "only discovery c[ould] reveal them." *Id.* (citing *United States v. Gaubert*, 499 U.S. 315, 325 (1991)). The third-party plaintiffs here also assert that internal guidelines are pertinent and that only further discovery could reveal them.

### C.    Application Of The Standards

The parties vigorously dispute whether or not there are mandatory policies, procedures, or regulations of the OTS—specifically, internal ones—relating to timing or the nature of the OTS's conduct concerning Vantus Bank's investments, which would allow the third-party plaintiffs' FTCA claims to escape the jurisdictional bar of the "discretionary function exception." The more important question, however, is whether the existence of such policies, procedures, or regulations is still unknown. *See Viasystems, Inc.*, 646 F.3d at 598 (indicating that jurisdictional discovery is only warranted if the facts necessary to resolving the jurisdictional inquiry are either unknown or disputed).

I note, first, that, in their original brief, the third-party plaintiffs asserted only that they "believe that mandatory standards or policies likely governed the OTS's conduct with respect to Vantus, and that they should be allowed to conduct limited jurisdictional discovery to find them." Third-Party Plaintiffs' Brief (docket no. 74) at 11-12. Such an assertion is essentially identical to the bare assertion of the claimants in *Viasystems* that jurisdictional discovery "would likely" reveal facts necessary to support jurisdiction, and such an assertion is "entirely speculative." 646 F.3d at 598. Thus, where the third-party plaintiffs initially offered only speculation or conclusory assertions about the existence of mandatory policies, procedures, or regulations of the OTS, I would have been within my discretion to deny jurisdictional discovery on that showing. *Id.* In their Reply, however, the third-party plaintiffs attempted to bolster their showing of the likelihood that such policies, procedures, or regulations exist, in light of "new materials" from OTS files obtained in discovery from the FDIC-R. Thus, I will consider their complete showing in support of their request for jurisdictional discovery in light of the pertinent "Rule 56(d)" factors identified in *Johnson*, 534 F.3d at 965.

One of the factors that I am instructed to consider is "what facts are sought and how they are to be obtained." *Id.* (first factor). The facts sought here are clear enough: The third-party plaintiffs seek discovery to determine the existence of any statutes, policies, procedures, or regulations specifically prescribing a course of action or a mandatory timeline for the OTS to act with respect to Vantus Bank. These facts are plainly relevant to the first prong of the inquiry to determine the applicability of the "discretionary function exception." *See Herden*, 726 F.3d at 1046-47.[3] As to how these facts can be obtained, *Johnson*, 534 F.3d at 965, the third-party plaintiffs contend that the existence of such policies, procedures, or regulations can be discovered from additional OTS documents, a Rule 30(b)(6) deposition, and a deposition of a former OTS employee involved in the examination of the Vantus Bank investments. I agree that *some very limited discovery*, perhaps of the kinds requested by the third-party plaintiffs, could demonstrate conclusively whether or not any such mandatory policies, procedures, or regulations exist.

I am also instructed to consider what efforts the third-party plaintiffs have made to obtain the pertinent policies, procedures, and regulations, and why their efforts have been unsuccessful. *Johnson*, 534 F.3d at 965 (third and fourth factors). Plainly, the third-party plaintiffs have shown sufficient effort by pursuing extended litigation of the discoverability of the OTS documents from the FDIC-R. The rub here is why the third-party plaintiffs' efforts to discover pertinent mandatory policies, procedures, or regulations have so far been unsuccessful. The third-party plaintiffs seem to suggest that the FDIC-R has so far evaded disclosing such information and that the OTS has not yet

---

[3] Indeed, it is not clear to me that the third-party plaintiffs have ever asserted that the "discretionary function exception" is inapplicable even if there are no mandatory policies, procedures, or regulations, at the second prong of the inquiry regarding the nature of the decision at issue. *See Herden*, 726 F.3d at 1047.

been compelled to do so. The FDIC-R and the OTS, on the other hand, contend that the reason is simply that no such mandatory policies, procedures, or regulations exist.

Consequently, I find that the dispositive question here is whether, as in *Ignatiev*, the third-party plaintiffs have no other way of discovering whether there are any internal policies, procedures, or regulations that can be an actionable source of a mandatory obligation of the OTS under the FTCA, or whether, as in *Baer* and *Freeman*, the third-party plaintiffs already have access to sufficient information to determine whether or not there is a reasonable probability that any such internal policies, procedures, or regulations exist. To put it another way, the question is whether jurisdictional discovery is likely to raise a genuine issue of material fact relevant to subject matter jurisdiction. *Johnson*, 534 F.3d at 965 (FTCA case); *accord Freeman*, 556 F.3d at 342 (holding that FTCA claimants are "not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion.").

It is true that, in this case, in addition to statutes and regulations in the public domain, the third-party plaintiffs have already received over 135,000 pages of documents from OTS files, including the various e-mail exchanges upon which they expressly rely in their Reply. They also have access to the Office of Inspector General, Department of the Treasury Audit Report, SAFETY AND SOUNDNESS: Material Loss Review of Vantus Bank. Despite the availability of these materials, the third-party plaintiffs have been unable to identify any policies, procedures, or regulations that would overcome application of the "discretionary function exception." *Baer*, 722 F.3d at 177 (quoting *Bell Atlantic Corp.*, 550 U.S. at 556, and citing the availability of an Office of the Inspector General Report on the conduct of the SEC in the incident in question, a follow-up report by the SEC, and the SEC's Enforcement Manual); *Freeman*, 536 F.3d at 342 and n.16 (concluding that jurisdictional discovery was not appropriate, where the

plaintiffs' allegations were based on statutes, regulations, and other authorities, and records of pertinent congressional investigations that were all publicly available).

That does not mean, however, that there is no "'reasonable expectation that discovery will reveal evidence of' any such policy." *Id.* The FDIC-R and the OTS invite me to assume that this is simply not a case in which the pertinent policies, procedures, or regulations are only available via discovery from the OTS. *Compare Ignatiev*, 238 F.3d at 467. I am not convinced by the third-party plaintiffs' argument that the delay in OTS action, reflected in e-mails available to them, suggests that there must be internal OTS policies, procedures, or regulations that were violated. Indeed, it might be fair to assume that the complete lack of any reference to such internal OTS policies, procedures, or regulations in those e-mails suggests that no such policies, procedures, or regulations exist. There is also some merit to the FDIC-R's and the OTS's arguments that the third-party plaintiffs rely only on bare assertions, not any likelihood or reasonable probability, to support their contention that jurisdictional discovery will raise genuine issues of material fact on the applicability of the "discretionary function exception" or produce the facts needed to withstand a Rule 12(b)(1) motion on that ground. *Johnson*, 534 F.3d at 965; *Freeman*, 556 F.3d at 342. Nevertheless, it seems to me that definitive knowledge of whether or not any mandatory internal policies, procedures, or regulations exist *does* reside exclusively with the OTS. *Cf. Ignatiev*, 238 F.3d at 467. Viewing a jurisdictional discovery question in hindsight, as the appellate courts in *Baer* and *Freeman* necessarily did, the conclusion of those courts that the claimants already had access to sufficient information to determine whether or not there was a reasonable probability that any mandatory regulations existed was reasonable. Taking a more pragmatic view as to what is the most efficient way to resolve the issue before me in the first instance, however, I reiterate that *some very limited discovery*, imposing very little burden on the OTS in

comparison to the importance of the issue of the applicability of the "discretionary function exception," could quickly resolve the matter.

I also believe that, in the circumstances presented here, the third-party plaintiffs are entitled to a straightforward answer to a straightforward question as to whether any such mandatory internal policies, procedures, or regulations exist, and the OTS has not yet been required to provide such an answer to such a question.[4] Such *limited* jurisdictional discovery is likely to *resolve* the question of subject matter jurisdiction, not simply raise a genuine issue of material fact relevant to subject matter jurisdiction. *Cf. Johnson*, 534 F.3d at 965 (FTCA case); *accord Freeman*, 556 F.3d at 342 (holding that FTCA claimants are "not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion."). Such *limited* jurisdictional discovery also properly balances the concerns arising from the fact that "the party seeking discovery is attempting to disprove the applicability of an immunity-derived bar to suit because immunity is intended to shield the defendant from the burdens of defending the suit, including the burdens of discovery," *Davila*, 713 F.3d at 264 (internal quotation marks omitted), with the concerns that the Federal Rules of Civil Procedure "be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." FED. R. CIV. P. 1.

---

[4] Indeed, had the OTS been willing to provide a straightforward, definitive response or affirmation, under oath, when the question of whether or not mandatory internal policies, procedures, or regulations existed was first raised, there would have been no need to waste time and resources litigating the jurisdictional discovery issue and there might have been no need for the OTS's Motion To Dismiss. It seems to me that the OTS has been "caught up in the game," rather than directing its energies to the prompt and inexpensive resolution of the pertinent question.

In short, I conclude that the third-party plaintiffs are entitled to *very limited jurisdictional discovery*, consisting of *one* of the following:

- No more than three requests for admissions; or

- No more than two requests for documents; or

- One Rule 30(b)(6) *telephonic* deposition, of *one* former OTS employee involved in the Vantus Bank investigation, to last *no more than two hours*; or

- Such other discovery method as the parties may agree upon.

The third-party plaintiffs will be required to accept the responses of the OTS to this jurisdictional discovery and will not be allowed follow-up discovery to attempt to impeach the answers, unless the third-party plaintiffs establish extraordinary cause. I will direct the parties to confer and attempt to agree on the method of jurisdictional discovery to be used in this case. If the parties are unable to reach an agreement by the deadline set below, they shall notify me, and I will promptly hold a telephonic status conference to choose the method.

## III.    CONCLUSION

Upon the foregoing, the third-party plaintiffs' August 8, 2014, Motion For Jurisdictional Discovery (docket no. 71) is **granted**, as follows:

1.    The third-party plaintiffs are entitled to a straightforward answer to a straightforward question as to whether any mandatory internal policies, procedures, or regulations exist that applied to the Vantus Bank investigation, through *very limited jurisdictional discovery*, consisting of *one* of the following:

- No more than three requests for admissions; or

- No more than two requests for documents; or

- One Rule 30(b)(6) *telephonic* deposition, of *one* former OTS employee involved in the Vantus Bank investigation, to last *no more than two hours*; or

- Such other discovery method as the parties may agree upon.

2.      The parties are ***directed to confer and attempt to agree*** on the method of jurisdictional discovery to be used in this case.  If the parties are unable to reach an agreement **by October 14, 2014**, they shall notify me, and I will hold a telephonic status conference to choose the method for limited jurisdictional discovery.

3.      The third-party plaintiffs shall have **to and including November 14, 2014,** to file their response to the OTS's July 15, 2014, Motion To Dismiss (docket no. 63), in order to allow them sufficient time to complete the jurisdictional discovery ordered above.

**IT IS SO ORDERED**.

**DATED** this 7th day of October, 2014.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA