# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of Vantus Bank,<br><br>    Plaintiff,<br><br>vs.<br><br>MICHAEL W. DOSLAND, MICHAEL S. MODERSKI, ARLENE T. CURRY, BARRY E. BACKHAUS, GARY L. EVANS, RONALD A. JORGENSON, JON G. CLEGHORN, and CHARLES D. TERLOUW,<br><br>    Defendants. | No. C 13-4046-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING D&O DEFENDANTS' MOTION FOR ADDITIONAL JURISDICTIONAL DISCOVERY** |
| MICHAEL W. DOSLAND, MICHAEL S. MODERSKI, ARLENE T. CURRY, BARRY E. BACKHAUS, GARY L. EVANS, RONALD A. JORGENSON, JON G. CLEGHORN, and CHARLES D. TERLOUW,<br><br>    Third-Party Plaintiffs,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA,<br><br>    Third-Party Defendant. | |

_____

**TABLE OF CONTENTS**

*I. INTRODUCTION ............................................................................ 2*
   *A. Procedural Background ......................................................... 2*
   *B. The Motion For Additional Jurisdictional Discovery ....................... 5*
      *1. The motion ................................................................... 5*
      *2. Arguments of the parties ................................................. 5*
*II. LEGAL ANALYSIS ......................................................................... 8*
   *A. Applicable Standards ............................................................. 8*
   *B. Application Of The Standards .................................................. 9*
*III. CONCLUSION ............................................................................. 13*

## I. INTRODUCTION

### A. Procedural Background

This case, arising from the failure of Vantus Bank in Sioux City, Iowa, is now before me on the D&O Defendants' December 22, 2014, Motion For Additional Jurisdictional Discovery (docket no. 104).[1] Some of the procedural history relevant to the present motion is set out in my October 7, 2014, Memorandum Opinion And Order (docket no. 95), concerning the D&O Defendants' original August 8, 2014, Motion For Jurisdictional Discovery (docket no. 71), so I will not repeat it here.

---

[1] In the related action, *Progressive Cas. Ins. Co. v. FDIC*, No. C 12-4041-MWB (N.D. Iowa), I identified the defendants and third-party plaintiffs in this action, who were also defendants in that action, as the D&O Defendants, because they are the former directors and officers of the failed bank. For the sake of consistency, I will do the same here.

Suffice it to say that, on May 27, 2014, the D&O Defendants filed their Third-Party Complaint (docket no. 54), asserting that the United States, acting as the Office of Thrift Supervision (OTS), negligently violated its duty to Vantus Bank, its stockholders, members, accountholders, depositors, officers, directors, the FDIC, and the Deposit Insurance Fund by failing to analyze accurately Vantus Bank's investments and to take more timely action to remedy Vantus Bank's alleged investment violations. In a Motion To Dismiss (docket no. 63), filed July 15, 2014, the OTS sought dismissal of the Third-Party Complaint for at least two independent reasons: (1) this court lacks jurisdiction, because the "discretionary function exception" to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.*, applies in this case; and (2) even if this court has jurisdiction, the Third-Party Complaint fails to state a claim upon which relief can be granted, because the regulators and examiners owed no duty to the failed bank.

On August 8, 2014, the D&O Defendants filed their original Motion For Jurisdictional Discovery (docket no. 71) on issues raised in the OTS's Motion To Dismiss. Somewhat more specifically, they sought discovery "to determine the existence of a statute, regulation, or policy specifically prescribing a course of action or a mandatory timeline for the OTS to act with respect to Vantus Bank." Motion (docket no. 71) at 3 ¶ 7. As I pointed out in my subsequent Memorandum Opinion And Order (docket no. 95), filed October 7, 2014, such discovery sought facts relevant to the *first* prong of the inquiry to determine the applicability of the "discretionary function exception." *See* Memorandum Opinion And Order at 19 (citing *Herden v. United States*, 726 F.3d 1042, 1046-47 (8th Cir. 2013)). I added, in a footnote, that it was not clear to me that the D&O Defendants had ever asserted that the "discretionary function exception" is inapplicable, even if the challenged action is discretionary, at the *second* prong of the inquiry, which asks whether the government employee's discretionary judgment or choice was based on considerations of social, economic, and political policy.

*Id*. at 19 n.3 (citing *Herden*, 726 F.3d at 1047). I granted the D&O Defendants' original Motion For Jurisdictional Discovery to the extent of allowing "*very limited jurisdictional discovery*," consisting of one of three options that I specified or "[s]uch other discovery method as the parties may agree upon." *Id.* at 23-24 (emphasis in the original).

The parties agreed to two seventy-five minute depositions—a Rule 30(b)(6) deposition of Anthony Jarieu, an OTS regulator, and a deposition of Audit Manager Deborah L. Harker, of the Treasury Department's Office of the Inspector General (OIG), who was a major contributor to the OIG's Audit Report, SAFETY AND SOUNDNESS: Material Loss Review of Vantus Bank—and the D&O Defendants also received what they described as "ongoing document production." Motion (docket no. 104) at 2 ¶¶ 6-7. Based on the information obtained, on December 2, 2014, the D&O Defendants requested, and, on January 1, 2015, were granted, leave to file an Amended Third-Party Complaint. *See* Motion (docket no. 98); Order (docket no. 112); Amended Third-Party Complaint (docket no. 113). In their Amended Third-Party Complaint, the D&O Defendants attempt to negate the OTS's "discretionary function" defense by alleging that the OTS had and violated a mandatory duty, and that, even if the OTS had discretion, its choice did not involve a decision based on considerations of social, economic, and political policy. In other words, in their Amended Third-Party Complaint, the D&O Defendants addressed, for the first time, the *second* prong of the inquiry concerning the applicability of the "discretionary function exception." *See Herden*, 726 F.3d at 1047.

Before leave to file their Amended Third-Party Complaint was granted, the D&O Defendants also filed the December 22, 2014, Motion For Additional Jurisdictional Discovery (docket no. 104), which is now before me.

### B. The Motion For Additional Jurisdictional Discovery

#### 1. *The motion*

In their Motion For Additional Jurisdictional Discovery, the D&O Defendants seek the following:

   a. Production of all remaining but not yet produced OIG materials relating to the Sept. 20, 2011, OIG Audit Report, Safety and Soundness: Material Loss Review of Vantus Bank; and

   b. A deposition of Joanne Haakinson, former employee of OTS, with discoverable knowledge as to whether an actual decision was made by OTS in August, 2007, but implementation of that decision did not actually occur until February 13, 2008.

Motion (docket no. 104), 3 ¶ 13. Thus, in subparagraph (b), the D&O Defendants now seek *discovery* related to the *second* prong of the "discretionary function exception" inquiry, having only just asserted *allegations* in their Amended Third-Party Complaint going to that prong of the inquiry. *See Herden*, 726 F.3d at 1047.

#### 2. *Arguments of the parties*

The D&O Defendants spend the majority of their brief in support of the present motion arguing that, so far, the FDIC-R and the OTS have thwarted their attempts to obtain relevant discovery. They argue that the issues raised in the OTS's Motion To Dismiss entitle them to obtain the complete set of OIG materials, as they have requested. They also argue that they are entitled to discovery concerning disputed facts regarding whether the OTS made a policy decision related to the investments in question, but simply failed to execute that decision for several months. They contend that this discovery can be obtained from the deposition of Ms. Haakinson.

5

Plaintiff FDIC-R filed its Resistance (docket no. 120) to the D&O Defendants' Motion For Additional Jurisdictional Discovery on December 23, 2014. The FDIC-R explains that it agrees with the OTS that additional jurisdictional discovery would be futile and would serve no purpose but delay and that the D&O Defendants have not satisfied the requirements for such jurisdictional discovery. The FDIC-R also contends that it has not "thwarted" the D&O Defendants' attempts to obtain discovery, because it simply has no authority to compel the OIG to produce anything and it has produced to the D&O Defendants everything that the OIG voluntarily produced to it on its request.

Third-party defendant OTS filed its separate Resistance (docket no. 122) on December 26, 2014. The OTS argues that the D&O Defendants' request for additional discovery fails, because (1) the information sought is not likely to lead to useful information, and (2) the D&O Defendants made insufficient efforts to obtain the information prior to filing their Motion For Additional Jurisdictional Discovery. The OTS argues that the discovery obtained so far shows the futility of attempts to discover non-existent mandatory guidelines or policies, so that the D&O Defendants are now seeking "all remaining OIG materials" and a deposition to try to find evidence that the OTS had made a policy decision related to the investments in question, but simply failed to execute that decision for several months. The OTS argues that no policy decision was made in Washington that regional regulators were required to implement. The OTS argues that the deposition of Mr. Jardieu, which the D&O Defendants have already taken, demonstrates that regional regulators retained discretion to manage the Vantus Bank situation. The OTS also argues that the D&O Defendants miss the point, because even if OTS employees in Washington made some kind of policy decision or characterization concerning Vantus Bank's investments and regional regulators failed to act promptly in accordance with that decision, *both* the decision or characterization of the investments and the decision about how and whether to implement that decision are discretionary,

6

policy-based determinations. To put it another way, the OTS argues that, because the overall decision about what to do about the bank's investments was discretionary, the timing of enforcement action based on that decision is still protected by the discretionary function exception. This is so, the OTS argues, because a contrary view would elevate form over substance. The OTS also points out that the D&O Defendants made no legitimate attempt to obtain the materials at issue before filing the present motion, where they have never made a FOIA request or sought a subpoena to the Treasury Department for the OIG materials. The OTS also argues that the documents already provided by the OTS and the FDIC-R and the depositions already taken provide adequate discovery on the pertinent issues.

After extensions of time to do so, the D&O Defendants filed their Reply (docket no. 127) on February 5, 2015. In that Reply, however, the D&O Defendants state that, because the OTS and the FDIC-R offer only scant arguments concerning other factors that I had determined were relevant to a motion for jurisdictional discovery, they address primarily the FDIC-R's and the OTS's contention that the they were not diligent in seeking the discovery in question. As to the diligence question, the D&O Defendants contend that the declaration of counsel for the OIG, submitted by the FDIC-R in support of its resistance, demonstrates that the FDIC-R had "easy and unfettered access to the OIG materials at a time when [the FDIC-R] was obligated to assemble and produce that material," but the FDIC-R made only selective disclosures. They then recount what they argue is a troubling history showing that they were not given any realistic chance to obtain the discovery necessary to respond to the OTS's Motion To Dismiss.

## II.    LEGAL ANALYSIS
### A.    *Applicable Standards*

As I set out in somewhat more detail in my Memorandum Opinion And Order (docket no. 95), 9-11, there is a well-established framework for determining whether or not the "discretionary function exception" bars a tort claim concerning actions of a government employee: First, the court asks whether the challenged conduct or omission is truly discretionary, because it was not controlled by mandatory policies, statutes, or regulations, but based on judgment or choice; and, second, if the challenged action is discretionary, whether the government employee's judgment or choice was based on considerations of social, economic, and political policy. *See Herden*, 726 F.3d at 1046-47. "As long as a discretionary decision is 'susceptible to policy analysis,' the exception applies 'whether or not [a] defendant in fact engaged in conscious policy-balancing.'" *Id*. at 1047 (internal citations omitted).

Also as set out in somewhat more detail in my Memorandum Opinion And Order (docket no. 95) at 11-12, to determine whether or not jurisdictional discovery should be allowed, courts consider the factors also relevant to whether or not to allow discovery under Rule 56(d) of the Federal Rules of Civil Procedure before deciding a motion for summary judgment. *See Johnson v. United States*, 534 F.3d 958, 965 (8th Cir. 2008). Those factors are the following:

> (1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful.

*Johnson*, 534 F.3d at 965. Also, bare assertions that jurisdictional discovery "would likely" reveal facts necessary to support jurisdiction are "entirely speculative," and will

8

not warrant the court's exercise of discretion to allow discovery. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 598 (8th Cir. 2011).

### B. *Application Of The Standards*

I conclude that the pertinent factors weigh heavily against allowing additional jurisdictional discovery in this case. First, as to what efforts the D&O Defendants have made to obtain relevant facts and why their efforts have been unsuccessful, *Johnson*, 534 F.3d at 965 (third and fourth factors), the vast majority of the D&O Defendants' arguments read more like arguments in support of a motion to compel than a motion for jurisdictional discovery. Indeed, a request for "[p]roduction of all remaining but not yet produced OIG materials relating to the Sept. 20, 2011, OIG Audit Report, Safety and Soundness: Material Loss Review of Vantus Bank," is not a request for *additional* discovery at all. Moreover, the parts of the record offered by all of the parties, including the declaration of Richard K. Delmar, Counsel to the Inspector General, do not demonstrate that the FDIC-R *ever* had "easy and unfettered access to the OIG materials at a time when [the FDIC-R] was obligated to assemble and produce that material," as the D&O Defendants contend. Rather, they show that the FDIC-R has *never* had custody or control of, or even unfettered access to, the OIG materials that the D&O Defendants seek, except those that the OIG voluntarily produced to the FDIC-R and the OTS and that they, in turn, provided to the D&O Defendants. Nor have the D&O Defendants demonstrated that the OTS has custody and control of, or unfettered access to, the OIG materials. There is also considerable merit in the OTS's argument that the D&O Defendants have not taken appropriate action to attempt to obtain the OIG materials directly. As the OTS points out, the D&O Defendants have never submitted a FOIA request or a subpoena to the OIG for the materials in question, but have continued to demand that the FDIC-R and the OTS produce documents based on the D&O Defendants'

9

unsupported speculation that those entities have or had custody and control of or access to the OIG materials. *Cf. Viasystems, Inc.*, 646 F.3d at 598 (speculation that the discovery will obtain the facts in question is not enough to warrant jurisdictional discovery).

The biggest problem with the D&O Defendants' request for additional jurisdictional discovery, however, is with the first two relevant factors, that is, what facts are sought (including how they are to be obtained), and how those facts are reasonably expected to raise a genuine issue of material fact concerning the "discretionary function exception." *Johnson*, 534 F.3d at 965. This is so, because the *additional* facts that the D&O Defendants seek—concerning whether the OTS actually made a decision in August 2007 about the investments of the bank that are at issue, but failed to implement that decision until February 13, 2008—would simply make no difference to the applicability of the "discretionary function exception." In their opening brief in support of the present motion, the D&O Defendants concede that the decision that was purportedly not timely implemented was a "*policy* decision related to the investments in question," D&O Defendants' Brief (docket no. 104-1), 13 (emphasis added), and there is no evidence that it was anything else. In the absence of any mandatory deadline to implement a "policy decision"—that is, a decision that was discretionary and based on policy, *see Herden*, 726 F.3d at 1046-47—the implementation of the "policy decision" and the timing of that implementation are also matters *susceptible* to the same social, economic, and political policies as the "policy decision" itself. *See id.* at 1047 ("As long as a discretionary decision is 'susceptible to policy analysis,' the exception applies 'whether or not [a] defendant in fact engaged in conscious policy-balancing.'" (internal citations omitted)). To conclude otherwise would elevate form over substance.

For example, in *Herden*, the Eighth Circuit Court of Appeals observed that the government employee's "selection of a seed mixture *implemented* the *policies* of the

10

[USDA's Environmental Quality Incentives Program (EQIP)] program." 726 F.3d at 1049 (emphasis added). The court then concluded, "A federal employee *implementing EQIP at the local, operational level* must have the discretion to balance environmental protection and cattle production in order for the program to be worth the government's significant investment." *Id*. at 1050 (emphasis added). In *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797 (1984), the Supreme Court held that the "discretionary function exception" shielded not only the federal government's broad decision to implement a "spot-check" system for ensuring compliance of airplanes with FAA regulations, but also "the acts of FAA employees in executing" the program. 467 U.S. at 820. Also, as the OTS points out, in *Johnson v. United States Department of Interior*, 949 F.2d 332 (10th Cir. 1992), the Tenth Circuit Court of Appeals concluded that Park Service decisions about if, when, and how to conduct rescue operations were shielded by the "discretionary function exception," noting that "[t]he discretionary function exception may apply in the absence of a conscious decision, so long as the Park Service's search and rescue program allowed room for the rangers to make independent policy judgments." 949 F.2d at 339. Indeed, the court concluded, "To attempt to separate the rangers' information gathering activity from the ultimate rescue decision is . . . to elevate form over substance." *Id*. at 340. Similarly, here, to separate the decision of local OTS regulators about when to implement a "policy decision" about the investments in question from the "policy decision" itself would elevate form over substance, even if the timing of the implementation was made in the absence of a conscious decision. *See also Herden*, 726 F.3d at 1047 ("As long as a discretionary decision is 'susceptible to policy analysis,' the exception applies 'whether or not [a] defendant in fact engaged in conscious policy-balancing.'" (internal citations omitted)).

Finally, where, as here, the district court has allowed jurisdictional discovery concerning the *first* prong of the "discretionary function exception" inquiry, it is not necessarily error for the district court to deny additional jurisdictional discovery concerning the *second* prong of the inquiry. As I pointed out in my prior Memorandum Opinion And Order (docket no. 95) at 16-17, in *Loughlin v. United States*, 393 F.3d 155 (D.C. Cir. 2004), the District of Columbia Circuit Court of Appeals held that the district court had erred by limiting jurisdictional discovery to the *first* prong, 393 F.3d at 167, but also concluded that, despite the district court's error in restricting discovery to "prong one" evidence, the claimants' jurisdictional discovery had provided information relevant to "prong two." *Id*. at 167-68. The appellate court also concluded that the claimants had made insufficient showing for additional discovery, because "they ha[d] failed to particularize their requests," that is, "to articulate precisely what information, pertaining to the nature of the decision whether to warn [of the presence of the munitions and contaminants] they ha[d] been denied." *Id*. at 168. Thus, additional jurisdictional discovery on the *second* prong may be denied, if prior discovery was adequate or if the movant fails to satisfy factors supporting additional discovery. Here, the D&O Defendants asserted, in support of their Motion For Leave To Amend [Their Third-Party Complaint] (docket no. 98), that the jurisdictional discovery already allowed had produced "admissible evidence" to support allegations that would negate application of the "discretionary function exception" at the *second* prong inquiry, that is, evidence that the conduct giving rise to OTS liability in this matter did not involve judgment or choice, and clearly did not involve a decision based on considerations of social, economic, and political policy. *See* Motion For Leave To Amend, 2-3, ¶ 6. Furthermore, the D&O Defendants' failure to demonstrate that the facts that they seek would negate application of the "discretionary function exception" at the second prong of the inquiry, as set out above, makes additional discovery inappropriate. *See Loughlin*, 393 F.3d at 168.

Thus, the D&O Defendants have failed to convince me that additional jurisdictional discovery should be allowed. They are not entitled to either "[p]roduction of all remaining but not yet produced OIG materials relating to the Sept. 20, 2011, OIG Audit Report, Safety and Soundness: Material Loss Review of Vantus Bank," or a deposition of Joanne Haakinson, former employee of OTS, who purportedly has discoverable knowledge as to whether an actual decision was made by OTS in August, 2007, but implementation of that decision did not actually occur until February 13, 2008.

## III. CONCLUSION

Upon the foregoing, the D&O Defendants' December 22, 2014, Motion For Additional Jurisdictional Discovery (docket no. 104) is denied in its entirety. The deadlines for supplemental briefing on the OTS's Motion To Dismiss that I set out in my Order (docket no. 128), filed February 10, 2015, remain in effect.

**IT IS SO ORDERED.**

**DATED** this 11th day of February, 2015.

MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA