# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver of Vantus
Bank,

       Plaintiff,

vs.

MICHAEL W. DOSLAND, MICHAEL
S. MODERSKI, ARLENE T. CURRY,
BARRY E. BACKHAUS, GARY L.
EVANS, RONALD A. JORGENSON,
JON G. CLEGHORN, and CHARLES D.
TERLOUW,

       Defendants.

_____

MICHAEL W. DOSLAND, MICHAEL
S. MODERSKI, ARLENE T. CURRY,
BARRY E. BACKHAUS, GARY L.
EVANS, RONALD A. JORGENSON,
JON G. CLEGHORN, and CHARLES D.
TERLOUW,

       Third-Party Plaintiffs,

vs.

THE UNITED STATES OF AMERICA,

       Third-Party Defendant.

_____

No. C 13-4046-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING THIRD-
PARTY DEFENDANT'S MOTION TO
DISMISS THIRD-PARTY
COMPLAINT**

# TABLE OF CONTENTS

I.  INTRODUCTION...........................................................................3

    A.  *The Complaint And The Third-Party Complaint* ............................ 3

    B.  *The Motion To Dismiss And The First Amended Third-Party Complaint* ............................................................................... 5

II. LEGAL ANALYSIS ........................................................................ 6

    A.  *Dismissal For Lack Of Jurisdiction* ............................................. 7

        1.  *Arguments of the parties* ..................................................... 7

            a.  *Original briefing* ...................................................... 7

            b.  *Supplemental briefing* ............................................ 10

        2.  *Applicable standards* ....................................................... 12

            a.  *Rule 12(b)(1) challenges to jurisdiction*...................... 12

            b.  *Standards applicable to the "discretionary function exception"* ............................................. 14

        3.  *Application of the standards* ............................................. 17

            a.  *Prong one inquiry: Mandatory requirements* .............. 18

            b.  *Prong two inquiry: Exercise of policy-based discretion* ............................................................ 19

        4.  *Summary*....................................................................... 24

    B.  *Other Grounds For Dismissal* .................................................. 24

III. CONCLUSION ............................................................................. 25

This case arises from the failure of Vantus Bank in Sioux City, Iowa, on September 4, 2009. The Federal Deposit Insurance Corporation, as Receiver for Vantus Bank, (FDIC-R), seeks to recover losses of the Bank from its former directors and officers, the D&O Defendants. In a third-party complaint, the D&O Defendants, in turn, seek an allocation of fault against and contribution from the United States, acting as the Office of

Thrift Supervision (OTS), for any damages that the FDIC-R may recover. The OTS has moved to dismiss the third-party complaint, *inter alia*, because the actions that the D&O Defendants assert are the basis for the OTS's fault fall within the "discretionary function exception" to liability under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq*.

## I. INTRODUCTION

Some of the procedural history relevant to the present motion is set out in my October 7, 2014, Memorandum Opinion And Order (docket no. 95), concerning the D&O Defendants' original August 8, 2014, Motion For Jurisdictional Discovery (docket no. 71). Much of the subsequent procedural history is set out in my February 11, 2015, Memorandum Opinion And Order Regarding D&O Defendants' Motion For Additional Jurisdictional Discovery (docket no. 129). Therefore, I will not repeat all of the pertinent procedural history here.

### A. The Complaint And The Third-Party Complaint

On May 20, 2013, the FDIC-R filed its Complaint (docket no. 2) against the D&O Defendants, pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1811 *et seq.*, alleging the D&O Defendants' gross negligence, negligence, and breach of fiduciary duty. The FDIC-R's claims are based primarily on its allegations that the D&O Defendants caused Vantus Bank to use $65 million—120 percent of its core capital—to purchase fifteen high risk collaterized debt obligations backed by Trust Preferred Securities (CDO-TruPS) without due diligence and in disregard and ignorance of regulatory guidance about the risks of and limits on purchases of such securities, resulting in losses of some $58 million.

On May 27, 2014, the D&O Defendants filed their Third-Party Complaint (docket no. 54), against the OTS. The D&O Defendants allege that the OTS had a duty to Vantus Bank, its stockholders, members, accountholders, depositors, officers, directors, the FDIC, and the Deposit Insurance Fund to act with ordinary care and without "fault," as defined in IOWA CODE § 668.1. They also allege that the negligence or fault of the OTS requires an apportionment of fault to the OTS and/or contribution to the D&O Defendants for any damages awarded to the FDIC-R on its claims. Somewhat more specifically, the D&O defendants alleged that the OTS was at fault for the following:

    a. Failing to perform an analysis of the impact of the CDOTruPS investments held by Vantus Bank on capital or earnings of the Bank;

    b. Failing to timely recognize and/or inform Vantus Bank of the applicability of Thrift Bulletin 73(a);

    c. After determining that Thrift Bulletin 73(a) applied, failing to timely inform Vantus Bank of the OTS' conclusion that Thrift Bulletin 73(a) applied to the CDOTruPS investments held by the Bank; [and]

    d. Failing to require divestment of investments held by Vantus Bank, including certain CDOTruPS, at an earlier time.

First Amended Third-Party Complaint, Count I, ¶ 23(a)-(d).[1]

---

[1] The D&O defendants also included a "catch-all" allegation that the OTS was at fault for "[s]uch other and further acts or omissions as will be revealed in additional discovery, including as will be revealed in documents that have been ordered produced by the FDIC-R in this matter no later than June 16, 2014 (See Docket Nos. 43, 51)." First Amended Third-Party Complaint, Count I, ¶ 23(e).

On July 15, 2014, the OTS filed the Motion To Dismiss (docket no. 63) that is now before me. In that Motion, the OTS seeks dismissal of the D&O Defendants' Third-Party Complaint for at least two independent reasons: (1) this court lacks jurisdiction, because the "discretionary function exception" to the FTCA, applies in this case; and (2) even if this court has jurisdiction, the Third-Party Complaint fails to state a claim upon which relief can be granted, because the regulators and examiners owed no duty to the failed Bank. After I permitted some jurisdictional discovery, the D&O Defendants filed their Resistance (docket no. 102), on December 22, 2014, and the OTS filed its Reply (docket no. 111), on January 5, 2015. That was not the end of the maneuvering leading to the present ruling, however.

On January 7, 2015, the D&O Defendants also filed their First Amended Third-Party Complaint (docket no. 113), with leave of court. In their First Amended Third-Party Complaint, the D&O Defendants attempt to negate the OTS's "discretionary function" defense by alleging that the OTS had and violated a mandatory duty, and that, even if the OTS had discretion, its choice did not involve a decision based on considerations of social, economic, and political policy. The First Amended Third-Party Complaint also includes somewhat different allegations of the fault or negligence of the OTS. Specifically, while retaining the allegations in ¶ 23(a)-(c) of the original Third-Party Complaint, quoted above, as the allegations in ¶ 60(a), (c), and (d) of the First Amended Third-Party Complaint, the First Amended Third-Party Complaint states a new allegation as ¶ 60(b). Instead of alleging fault for failing to require divestment sooner, the new subparagraph alleges fault as following:

> b. Failing to make the required determination as to
> whether the Bank's Combined CDO/TPS Portfolio
> represented an unsafe and unsound condition.

First Amended Third-Party Complaint, Count I, ¶ 60(b).[2]

In addition to granting leave to amend, the court granted the parties leave to file supplemental briefs concerning the OTS's Motion To Dismiss in light of the First Amended Third-Party Complaint. *See* Order (docket no. 112). On January 21, 2015, the OTS filed its Supplemental Brief (docket no. 118), adding an argument that the First Amended Third-Party Complaint should be dismissed for a third reason, that is, that it fails to state any plausible basis for causation, in light of the deletion of the allegation of fault for failing to require divestment sooner. On February 11, 2015, I denied the D&O Defendants' request for additional jurisdictional discovery and reset deadlines for remaining supplemental briefing on the OTS's Motion To Dismiss. *See* Memorandum Opinion And Order Regarding D&O Defendants' Motion For Additional Jurisdictional Discovery (docket no. 129). On February 20, 2015, the D&O Defendants filed their Supplemental Resistance (docket no. 132), and on February 24, 2015, the OTS filed its Supplemental Reply (docket no. 133). These briefs did conclude the briefing on the OTS's Motion To Dismiss.

In light of the extensive briefing, I do not find oral arguments to be necessary on the OTS's Motion To Dismiss.


## II.    LEGAL ANALYSIS

As noted, above, the OTS has moved for dismissal of the D&O Defendants' First Amended Third-Party Complaint on three independent grounds. I will consider each of those grounds, to the extent necessary, beginning with the OTS's challenge to subject matter jurisdiction.

---

[2] The "catch-all" allegation of fault in the First Amended Third-Party Complaint is also somewhat different: "Such other and further acts or omissions as may be revealed in additional discovery." First Amended Third-Party Complaint, Count I, ¶ 60(e).

### A. *Dismissal For Lack Of Jurisdiction*

The OTS's first ground for dismissal is that this court lacks jurisdiction, because the "discretionary function exception" to the FTCA, applies to the conduct of the OTS at issue in the D&O Defendants' Third-Party Complaint, as originally pleaded and as amended. The D&O Defendants argue that their Third-Party Complaint, at least as amended, should not be dismissed on this ground.

### 1. *Arguments of the parties*

### a. *Original briefing*

As to lack of jurisdiction over the original Third-Party Complaint, the OTS argued that, in accordance with what it describes as "a significant mass of cases," I should find that the banking regulators' and examiners' conduct cannot subject the United States to suit, because the "discretionary function exception" excepts their conduct from the FTCA's waiver of sovereign immunity. As to the first prong of the inquiry to determine the applicability of the "discretionary function exception"—whether the acts are mandatory or discretionary—the OTS argues that, even if it was participating intimately in the Bank's operations, the day-to-day management of banking affairs requires judgments that involve the exercise of discretion for which there are no mandatory requirements. As to the second prong of the inquiry—if there are no mandatory requirements, whether the exercise of discretion involves political, economic, or social policy considerations—the OTS argues that the decisions at issue here were undertaken for policy reasons of primary concern to the regulatory agencies. They point out that Thrift Bulletin 73(a) (TB 73a), on which the D&O Defendants rely, expressly grants regulators discretion in dealing with bank investments that violate the guidelines in that Bulletin. The OTS also argues that the Office of Inspector General, Department of the Treasury Audit Report, SAFETY AND SOUNDNESS: *Material Loss Review of Vantus*

Bank (OIG Report), on which the D&O Defendants also rely, does not establish any mandatory requirements, even if it criticizes the regulators for a delay in informing the Bank that certain investments were subject to TB 73a because of a miscommunication between regional OTS regulators and OTS staff in Washington, D.C., and even if the miscommunication was the result of negligence. The OTS argues that an after-the-fact determination that regional OTS regulators had an "obligation" to make a safety and soundness determination in light of the investments at issue does not show that there was any mandatory policy to do so at the time of the regional OTS regulators' challenged actions. The OTS contends that the regional OTS regulators retained the discretion to determine the timing and manner of their response to the investments in question, on policy grounds, notwithstanding any determination by OTS staff in Washington, D.C., as to the applicability of TB 73a to those investments. The OTS also argues there is no evidence of any mandatory deadline to communicate that determination to the Bank or to take any other action with regard to those investments.

In response, the D&O Defendants argue that, notwithstanding that I allowed some jurisdictional discovery, I should defer the jurisdictional issue until a more robust factual record has been made, because determination of the jurisdictional issue here is bound up with the merits of their claims. They also argue that the OTS bears the burden to prove that the "discretionary function exception" applies, but the OTS has not carried this burden, because the "mass" of case law it cites is inapposite.

The D&O Defendants' original arguments concerning the two-prong inquiry about applicability of the "discretionary function exception" actually rely on facts later alleged in their First Amended Third-Party Complaint. Thus, as to the first prong, the D&O Defendants contend that they have now identified an admission of the OTS that there was a breach of a mandatory standard, because the OTS's "Internal Failed Bank Review," authored by Thomas F. Johnson, OTS Field Manager, Northeast Region, dated March

23, 2010, stated that OTS Midwest Region supervisory staff "had an obligation to determine whether or not the Bank's Combined CDO/TPS Portfolio represented an unsafe and unsound condition." The D&O Defendants also cite deposition testimony of Office of Inspector General (OIG) Audit Manager Deborah L. Harker as stating this reference to an "obligation" indicates that OTS regional managers "would have to determine if exceeding that 15 percent limit [in TB 73a] represented an unsafe and [un]sound condition." As to the second prong, the D&O Defendants argue that, even if the relevant decisions were discretionary, the OTS failed to make any decision *at all* about the investments in question, despite repeated inquiries from the Bank, so that the OTS cannot claim that the decision involved social, economic, or political policy. The D&O Defendants also argue that, no matter how the OTS characterizes its conduct, it cannot point to any decision that was "susceptible to policy analysis," because nothing in the record supports a contention that the failure to communicate with the Bank *at all* was susceptible to policy analysis. Rather, they contend, the OTS simply "dropped the ball completely." In the alternative, the D&O Defendants argue that there is evidence that OTS headquarters made a decision that regional regulators failed to implement for several months, but a failure to effectuate policy is not protected by the "discretionary function exception."

In reply, the OTS argues that there is no reason to delay a decision on the jurisdictional question, because none of the cases that the D&O Defendants rely on to suggest that the issues of jurisdiction and the merits are intertwined have anything to do with bank regulators. The OTS also argues that the D&O Defendants have failed to demonstrate what factual disputes concerning their claims are determinative of the jurisdictional question. The OTS also argues that the D&O Defendants' contention that the OTS should bear the burden of proof on the jurisdictional question is erroneous, but

that, ultimately, it makes no difference which party bears the burden of proof in this case, because the absence of jurisdiction is plain.

Turning to the two-prong inquiry, the OTS argues that it has identified substantial authority holding that the "discretionary function exception" applies to bank regulators' decisions. The OTS also argues that any decision about what to do about the Bank's investments was plainly "discretionary," because there was no mandatory statute or regulation. Indeed, the OTS argues, the post-hoc opinion stated in an internal review about an "obligation" simply is not the stuff of which a mandatory duty at the time is made. The OTS also points out that the further deposition testimony of the OIG Audit Manager actually makes clear that the regional OTS regulators *were* making a safety and soundness determination when they sought guidance from the central office in Washington, D.C. As to the second prong of the inquiry, the OTS argues that the decision of what, if anything, to do about the Bank's portfolio of the investments in question was necessarily based on considerations of social, economic, and political policy. The OTS rejects the D&O Defendants' contention that the OTS did not make any decision "at all," where the regional OTS was seeking policy guidance from the central office for such a decision, and even when that guidance was provided, the regional regulators had the discretion to decide what to do—and that is exactly what they ultimately did do. That being the case, the OTS contends, the delay resulting from miscommunication does not convert the policy-based decision into one that falls outside of the protection of the "discretionary function exception."

### b.    Supplemental briefing

As noted, above, the parties were allowed to file supplemental briefs on the OTS's Motion To Dismiss after the D&O Defendants filed their First Amended Third-Party Complaint. In its supplemental brief, the OTS focused on its new (third) ground for dismissal, lack of a plausible claim of causation, rather than on its jurisdictional

argument. The D&O Defendants' supplemental brief was not so limited, however. Rather, the D&O Defendants reiterated their contention, now expressly founded on allegations in the First Amended Third-Party Complaint, that the OTS has admitted that it violated a mandatory duty to make a safety and soundness determination of the Bank. The D&O Defendants also argue that the OTS's contention that its conduct involved considerations of social, economic, and political policy is unpersuasive, because there is no such basis for the break in communications between the regional OTS and the Bank concerning the investments in question. The D&O Defendants reiterate that a failure to effectuate policy choices already made is not protected by the "discretionary function exception." They also contend that my analysis of "failure to implement" cases conflates the "mandatory deadline" analysis with the "policy basis" analysis, but the two prongs must be considered separately. Here, they reiterate, there is no evidence that the delay in communicating a decision involved any social, economic, or policy consideration.

In its supplemental reply, the OTS reiterates its argument from its original reply that a post-hoc opinion in an internal review of the OTS's conduct cannot establish a mandatory requirement for action at the time of the conduct. As to the D&O Defendants' "failure to implement" claim, the OTS argues that the D&O Defendants are improperly attempting to isolate a component of the decisions and the timing of events. The OTS contends, however, that the record shows beyond dispute that its regulators (1) learned about the investments, (2) consulted staff in Washington about whether discretionary thrift bulletin guidance applied, (3) received feedback from Washington in the form of a discretionary, policy-based decision about whether discretionary bulletin guidance applied, and (4) then made a discretionary, policy-based determination regarding what to do about the investments. The OTS argues that, even if a miscommunication delayed the ultimate decision, that miscommunication does not change the nature of the decision or nullify the application of the "discretionary function exception."

## 2.    Applicable standards

I turn, next, to a summary of the legal standards applicable to this part of the OTS's Motion To Dismiss.  Those standards concern a motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and the standards concerning applicability of the "discretionary function exception" to claims under the FTCA.

### a.    Rule 12(b)(1) challenges to jurisdiction

Rule 12(b)(1) provides for a pre-answer motion to dismiss "for lack of subject-matter jurisdiction." FED. R. CIV. P. 12(b)(1).  As the Eighth Circuit Court of Appeals has explained,

> "The existence of subject-matter jurisdiction is a question of law that this court reviews de novo." *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 958 (8th Cir.2011). The party seeking to invoke federal jurisdiction . . . carries the burden, which may not be shifted to another party. *Great Rivers Habitat Alliance v. FEMA*, 615 F.3d 985, 988 (8th Cir.2010).

*Jones v. United States*, 727 F.3d 844, 846 (8th Cir. 2013); *accord Key Med. Supply, Inc. v. Burwell*, 764 F.3d 955, 961 (8th Cir. 2014) (review is *de novo*).  Dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) may be permissible on the basis of a defense or exception to jurisdiction, such as the "discretionary function exception" to the waiver of sovereign immunity under the FTCA.  *See, e.g., Herden v. United States*, 726 F.3d 1042, 1046 (8th Cir. 2013).

Where a party limits its attack to the face of the complaint, the attack is a "facial challenge" to subject matter jurisdiction.  *Id*. (citing *BP Chems. Ltd. v. Jiangsu Sopo Corp.*, 285 F.3d 677, 680 (8th Cir. 2002).  On a "facial challenge," "'the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6).'"  *Id*. (quoting

*Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). Those protections include treating the complainant's factual allegations as true and dismissing only if it appears beyond doubt that the complainant can prove no set of facts in support of its claim that would entitle it to relief. *Osborn*, 918 F.2d at 729 & n.6. On the other hand, on a "factual challenge," "'no presumptive truthfulness attaches to the [complainant's] allegations, and the existence of disputed material facts will not preclude [the court] from evaluating . . . the merits of the jurisdictional claims.'" *Iowa League of Cities v. EPA*, 711 F.3d 844, 861 (8th Cir. 2013) (quoting *Osborn*, 918 F.2d at 729–30 & n.6). The OTS's attack on jurisdiction here is plainly "factual," not least because the parties were allowed some jurisdictional discovery prior to full briefing of the challenge and because both parties have relied on matters beyond the face of the pleadings, submitted in various exhibits and appendices, but also because the parties have asked for, and I have conducted, an inquiry into the type of relief sought and the factual nature of the OTS's conduct at issue. *See Faibisch v. University of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002) (a "factual challenge" to subject matter jurisdiction does not necessarily require an evidentiary hearing, but turns on whether the district court engages in a factual review and inquires into and resolves factual disputes). On such a "factual challenge,"

> To the extent that the district court must resolve factual disputes to determine whether it has jurisdiction, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir.1990). If the district court does so, "the appellate court must then review those findings under the 'clearly erroneous' standard." *Id*.

*Flores v. United States*, 689 F.3d 894, 900 (8th Cir. 2012).

### b. Standards applicable to the "discretionary function exception"

In prior rulings in this case, I have summarized the standards for determining the applicability of the "discretionary function exception" to the waiver of sovereign immunity under the FTCA. Nevertheless, I will summarize and expand upon those standards again, here, now that I must make factual and legal determinations as to the applicability of the exception, on the OTS's "factual challenge" to jurisdiction.

In *Herden v. United States*, 726 F.3d 1042 (8th Cir. 2013), the Eighth Circuit Court of Appeals provided a succinct explanation of the "discretionary function exception," and its role in a court's subject matter jurisdiction over FTCA claims, as follows:

> Pursuant to the FTCA, the federal government waives sovereign immunity and allows itself to be sued
>
>> for injury or loss of property … caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.
>
>> 28 U.S.C. § 1346(b)(1). This broad waiver does not, however, apply to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This exception is referred to as the discretionary function exception. *See, e.g., Walters v. United States*, 474 F.3d 1137, 1139 (8th Cir.2007). "If the FTCA's discretionary function exception applies, it is a jurisdictional bar to suit." *Id.*

A well-established legal framework applies to determine whether the discretionary function exception bars a party's suit under the FTCA. The first inquiry is whether the challenged conduct or omission is truly discretionary, that is, whether it involves an element of judgment or choice instead of being "controlled by mandatory statutes or regulations." *United States v. Gaubert*, 499 U.S. 315, 328, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) (citing *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)). If the challenged conduct is not discretionary, the exception does not apply.

If the challenged action is discretionary, however, the next inquiry is whether the government employee's judgment or choice was "based on considerations of social, economic, and political policy." *Layton v. United States*, 984 F.2d 1496, 1499 (8th Cir.1993) (citing *Berkovitz*, 486 U.S. at 536–37, 108 S.Ct. 1954). Not all discretionary decisions are immune from suit because the Congressional purpose of the exception is "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy[.]" *United States v. Varig Airlines*, 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). However, as long as a discretionary decision is "susceptible to policy analysis," *Gaubert*, 499 U.S. at 325, 111 S.Ct. 1267, the exception applies "whether or not [a] defendant in fact engaged in conscious policy-balancing." *C.R.S. ex rel. D.B.S. v. United States*, 11 F.3d 791, 801 (8th Cir.1993).

*Herden*, 726 F.3d at 1046-47.

I now add that, at the first prong of the inquiry, "mandatory" standards or requirements can be established by statutes, rules, regulations, or express or established policies. *Id*. at 1046; *Hinsley v. Standing Rock Child Protective Servs.*, 516 F.3d 668, 672 (8th Cir. 2008); *Claude v. Smoia*, 263 F.3d 858, 860 (8th Cir. 2001) (stating that the mandatory requirement may be shown from "established governmental policy"). The

Eighth Circuit Court of Appeals has "consistently required that the regulation at issue dictate a specific course of conduct in order for the conduct to rise to the level of a mandatory duty." *Appley Bros. v. United States*, 164 F.3d 1164, 1172 (8th Cir. 1999). Thus, a duty is mandatory if the agency official has "'no rightful option but to adhere to the directive.'" *CRS by DBS v. United States*, 11 F.3d 791, 796 (8th Cir. 1993) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)).

I also add that, at the second prong of the analysis, if the court had determined that the decision was a discretionary one, "'it must be presumed that the agent's acts are grounded in policy when exercising that discretion.'" *Herden*, 726 F.3d at 1048 (quoting *Gaubert*, 499 U.S. at 324). Thus, the party asserting that the "discretionary function exception" is inapplicable "'must rebut this presumption.'" *Id*. (quoting *Demery v. United States Dep't of Interior*, 357 F.3d 830, 833 (8th Cir. 2004)). As the court also explained in *Herden*,

> "Discretionary conduct is not confined to the policy or planning level." *Id*. at 325, 111 S.Ct. 1267. The fact that [an agency official's] decision involved technical or professional judgment at the operational level is not enough to remove his decision from the protection of the discretionary function exception. *See Layton*, 984 F.2d at 1500 ("[T]he Supreme Court has repeatedly said that it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case.... In other words, the fact that determinations are made at a relatively low level does not prevent the applicability of the exception.") (internal quotation marks and citation omitted). Thus, the relevant inquiry does not focus on whether [the agency official] applied professional or technical judgment to make a decision about just one [regulatory decision for one regulated entity]. Rather, the inquiry is whether the [regulatory] decision was susceptible to a policy analysis

> because it was "based on considerations of social, economic,
> and political policy." *Id.* at 1499.

*Herden*, 726 F.3d at 1048-49. A discretionary decision is susceptible to policy analysis, when it concerns the policies that the agency was required to consider. *See id.* at 1049 (noting that, in *Demery*, the court had held that the BIA's maintenance of an aeration system located on an Indian reserve fell within the "discretionary function exception," explaining that the BIA's maintenance of the aeration system clearly lent itself to policy analysis, because the decision concerned protecting the environment and aquatic habitats, which were obvious policy issues under an agency program designed to address soil, water, air, and related natural resources concerns). A discretionary function is also susceptible to policy analysis if it involves the need to balance policy considerations. *Id.* at 1051. Even implementation of articulated policies, at an operational level, may require the kind of balancing of policy considerations that fall within the "discretionary function exception." *Id.* at 1050.

### 3.  *Application of the standards*

It appears plain to me that, at least on a "factual challenge" to subject matter jurisdiction, such as the one made by the OTS here, the party asserting jurisdiction bears the burden of proof. *See Jones*, 727 F.3d at 846; *see also Herden*, 726 F.3d at 1048 (stating that the court must presume that the agent's acts are grounded in policy when exercising discretion given to the agent and that, the party asserting that the "discretionary function exception" is inapplicable must rebut this presumption). Nevertheless, I need not decide that issue, because I find that, whoever bears the burden of proof, the record makes clear that the challenged conduct of the OTS falls within the "discretionary function exception."

## a.    Prong one inquiry:  Mandatory requirements

At the first prong of the inquiry to determine the applicability of the "discretionary function exception"—whether the challenged agency action is discretionary or mandatory, *see Herden*, 726 F.3d at 1046-47—the D&O Defendants have identified what they assert is a mandatory requirement as to only one of the four allegations of "fault" of the OTS in their First Amended Third-Party Complaint.  Indeed, they contend that the OTS has admitted that there was a breach of a mandatory standard.  They contend that such an admission is in the OTS's "Internal Failed Bank Review," authored by Thomas F. Johnson, OTS Field Manager, Northeast Region, dated March 23, 2010, which states that OTS Midwest Region supervisory staff "had an obligation to determine whether or not the Bank's Combined CDO/TPS Portfolio represented an unsafe and unsound condition."  They also cite deposition testimony of OIG Audit Manager Deborah L. Harker as stating that this reference to an "obligation" indicates that OTS regional managers "would have to determine if exceeding that 15 percent limit [in TB 73a] represented an unsafe and [un]sound condition."

If either statement is, indeed, a statement of a mandatory requirement, it necessarily applies only to the allegation of the OTS's "fault" in Count I, ¶ 60(b), which alleges that the OTS "[fail[ed] to make the required determination as to whether the Bank's Combined CDO/TPS Portfolio represented an unsafe and unsound condition."  First Amended Third-Party Complaint, Count I, ¶ 60(b).  Although the parties dispute whether a statement by a single agency official or an outside reviewer of the conduct of an agency can establish a mandatory policy, I conclude that the crux of the problem with the D&O Defendants' reliance on these statements of a purportedly mandatory policy is that neither is a statement of "*established* governmental policy."  *See Claude*, 263 F.3d at 860 (emphasis added) (stating that the mandatory requirement may be shown from "established governmental policy").  Rather, these statements are from *post-hoc* reviews

18

of agency action, which do not cite or purport to rely on mandatory, established policies at the time of the conduct under review. Such statements simply do not constitute statements of relevant mandatory requirements.

The D&O Defendants have not even attempted to identify mandatory requirements that the OTS violated as the basis for their other allegations of the OTS's "fault." Those other allegations of fault are the following: "Failing to perform an analysis of the impact of the CDOTruPS investments held by Vantus Bank on capital or earnings of the Bank"; "[f]ailing to timely recognize and/or inform Vantus Bank of the applicability of Thrift Bulletin 73(a)"; and "[a]fter determining that Thrift Bulletin 73(a) applied, failing to timely inform Vantus Bank of the OTS' conclusion that Thrift Bulletin 73(a) applied to the CDOTruPS investments held by the Bank." *See* First Amended Third-Party Complaint, Count I, ¶ 60(a), (c), and (d). Notwithstanding jurisdictional discovery expressly intended to discover the existence of a statute, regulation, or policy specifically prescribing a mandatory timeline for the OTS to act with respect to Vantus Bank, the D&O Defendants have failed to identify any such statutes, regulations, or policies, or any other basis for mandatory timing requirements.

Because I find, as a matter of fact and law, that there were no "established governmental policies" mandating requirements concerning any of the conduct alleged by the D&O Defendants to constitute "fault" of the OTS, my analysis proceeds to prong two concerning the applicability of the "discretionary function exception." *See Herden*, 726 F.3d at 1046-47.

### b. Prong two inquiry: Exercise of policy-based discretion

At the second prong of the inquiry, which I now reach because the challenged action is discretionary, I must determine whether the OTS's judgment or choice was based on considerations of social, economic, and political policy. *Herden*, 726 F.3d at

1047 (internal quotation marks and citations omitted). Notwithstanding the D&O Defendants' arguments to the contrary, I conclude that it was.

First, I find that, as a matter of law and fact, the OTS did not fail to act "at all," as the D&O Defendants contend. Rather, as the OTS contends, the record shows beyond dispute that its regulators (1) learned about the investments, (2) consulted staff in Washington about whether discretionary thrift bulletin guidance applied, (3) received feedback from Washington in the form of a discretionary, policy-based decision about whether discretionary bulletin guidance applied, and (4) then made a discretionary, policy-based determination regarding what to do about the investments. Furthermore, the D&O Defendants concede that, during what they contend was the fatal period of inaction by the OTS prior to February 2008, the OTS responded to the Bank's August 23, 2007, correspondence noting a decrease in liquidity of the CDO-TruPS securities and requesting an extension of time until the end of 2007 to sell those securities and reduce the Bank's investment, and OTS approved the requested extension. *See* D&O Defendants' Resistance (docket no. 102), Statement Of Facts (docket no. 102-2), ¶¶ 13-14, Appendix (docket no. 102-3), 30-31. They also concede that the Bank requested another extension for the same reason on December 19, 2007, and that the OTS reiterated its request for guidance from its staff in Washington, D.C., which led to the OTS's eventual response to the Bank in February 2008. *See id.*, Statement Of Facts at ¶¶ 15-26, Appendix at 32-37. Thus, the D&O Defendants' claims are claims of *untimeliness* of action implementing policy, not claims of *inaction*.

Second, the D&O Defendants take issue with the following statement, in my ruling denying their request for additional jurisdictional discovery:

> In the absence of any mandatory deadline to implement a "policy decision"—that is, a decision that was discretionary and based on policy, *see Herden*, 726 F.3d at 1046-47—the implementation of the "policy decision" and the timing of that

implementation are also matters *susceptible* to the same social, economic, and political policies as the "policy decision" itself. *See id.* at 1047 ("As long as a discretionary decision is 'susceptible to policy analysis,' the exception applies 'whether or not [a] defendant in fact engaged in conscious policy-balancing.'" (internal citations omitted)). To conclude otherwise would elevate form over substance.

Memorandum Opinion And Order Regarding D&O Defendants' Motion For Additional Jurisdictional Discovery (docket no. 129), 10. The D&O Defendants contend that this statement improperly conflates the two prongs of the inquiry concerning the applicability of the "discretionary function analysis," but both prongs must be considered as to implementation and timing decisions, as well as to the initial agency decision. I do not agree with their characterization of my statement. Plainly, I was considering the *first* prong of the inquiry, when I stated that, "in the absence of any mandatory deadline to implement a 'policy decision' . . . ," because it is such a determination at the *first* prong that triggers the *second* prong of the inquiry. The statement is that, in such circumstances, at the *second* prong of the inquiry, the implementation decision is also susceptible to social, economic, and political policy considerations.

I now acknowledge, however, that this statement of the result of the *second* prong inquiry in such circumstances was overinclusive, because there *may be* implementation and timing decisions that are *not* susceptible to the same social, economic, and political policy considerations as the decision being implemented. *See, e.g., Wishnant v. United States*, 400 F.3d 1177, 1182 (9th Cir. 2005) (concluding that negligence in failing to follow through on safety inspection procedures is not a policy choice of the type that the "discretionary function exception" shields); *see also Herden*, 726 F.3d at 1050-51 (discussing cases in which decisions of a governmental official involved only the exercise of professional judgment, not policy-based considerations or balancing of competing policies that would be protected by the "discretionary function exception"). The correct

statement, as the Eighth Circuit Court of Appeals has explained, is that, in such circumstances, there is a *presumption* that "'the agent's acts are grounded in policy when exercising that discretion.'" *Herden*, 726 F.3d at 1048 (quoting *Gaubert*, 499 U.S. at 324). It is then the burden of the party asserting jurisdiction—*i.e.*, the party asserting that the "discretionary function exception" is inapplicable—to rebut that presumption. *Id*.

The D&O Defendants have not rebutted that presumption here. The fact that a decision about how and when to implement policy determinations concerning the Bank's assets involved technical or professional judgment at the operational level does not, of course, remove the implementation and timing decisions from the "discretionary function exception." *See id.* at 1048-49. Even after OTS staff in Washington, D.C., made a policy determination that TB 73a should be applied to the investments of the Bank in question here, the timing and implementation of that determination by regional OTS regulators were still susceptible to consideration and balancing of the liquidity of those investments, the extent of the Bank's investment in them, and the effect of the investments on the Bank. All of these considerations are plainly economic policy considerations that the OTS was designed to address when dealing with an insolvent bank. *See id.* at 1049-51. "As long as a discretionary decision is 'susceptible to policy analysis,' the exception applies 'whether or not [a] defendant in fact engaged in conscious policy-balancing.'" *See id.* at 1047 (internal citations omitted)).

The D&O Defendants attempt to separate the *timing* of the implementation of the policy decision—which they contend was the result of a miscommunication about the policy decision made by OTS staff in Washington, D.C.—from an implementation decision that is otherwise susceptible to policy considerations. I conclude that doing so, even if the timing of the implementation was made in the absence of a conscious decision, elevates form over substance. *Id.*; *see also id.* at 1050 ("A federal employee

implementing [an environmental quality incentives program] at the local, operational level must have the discretion to balance environmental protection and cattle production in order for the program to be worth the government's significant investment"); *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 820 (1984) (holding that the "discretionary function exception" shielded not only the federal government's broad decision to implement a "spot-check" system for ensuring compliance of airplanes with FAA regulations, but also "the acts of FAA employees in executing" the program); *Johnson v. United States Department of Interior*, 949 F.2d 332, 339-40 (10th Cir. 1992) (concluding that Park Service decisions about if, when, and how to conduct rescue operations were shielded by the "discretionary function exception," noting that "[t]he discretionary function exception may apply in the absence of a conscious decision, so long as the Park Service's search and rescue program allowed room for the rangers to make independent policy judgments," and that "[t]o attempt to separate the rangers' information gathering activity from the ultimate rescue decision is . . . to elevate form over substance").

The D&O Defendants contend that the decision of the Tenth Circuit Court of Appeals in *Johnson* is distinguishable, because, they argue, the information gathering by the Park Service at issue there, concerning the whereabouts or condition of missing climbers, was made before the ultimate policy decision about pursuing rescue operations. The principle in *Johnson* that is instructive, however, is that "'[a] decision that is a component of an overall policy decision protected by the discretionary function exception also is protected by this exception.'" *See* 949 F.2d at 340 (quoting *Zumwalt v. United States*, 928 F.2d 951, 955 (10th Cir. 1991)). Where, as here, the decision about whether or not to implement the policy decision of OTS staff in Washington, D.C., was discretionary and susceptible to policy considerations—and, thus, was protected by the "discretionary function exception"—the timing component of the implementation was

also protected by the "discretionary function exception," *see id.*, even if it did not involve conscious policy-balancing. *See Herden*, 726 F.3d at 1047.

The "discretionary function exception" protects all of the actions or omissions of the OTS claimed to be negligent or "faulty" by the D&O Defendants in their First Amended Third-Party Complaint.

### 4. Summary

Because the "discretionary function exception" protects all of the actions or omissions of the OTS that the D&O Defendants allege in their First Amended Third-Party Complaint were negligent or "faulty," this court does not have jurisdiction over the claims in the First Amended Third-Party Complaint, and the OTS is entitled to dismissal of those claims pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See Herden*, 726 F.3d at 1046-47.

### B. Other Grounds For Dismissal

The OTS has also moved for dismissal of the D&O Defendants' First Amended Third-Party Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on two grounds. The OTS argues that, even if this court has jurisdiction, the First Amended Third-Party Complaint fails to state a claim upon which relief can be granted, because the regulators and examiners owed no duty to the failed Bank. The OTS also contends that the First Amended Third-Party Complaint fails to state any plausible basis for causation, in light of the deletion of the allegation of fault for failing to require divestment sooner. I find it unnecessary—and inappropriate—to consider the sufficiency of the pleading of claims, pursuant to Rule 12(b)(6), where this court does not have subject matter jurisdiction over those claims. Consequently, the parts of the OTS's Motion To Dismiss asserting these further grounds for dismissal are denied as moot.

### III.    CONCLUSION

Upon the foregoing, the July 15, 2014, Motion To Dismiss (docket no. 63), as supplemented, filed by third-party defendant United States, acting as the Office of Thrift Supervision (OTS), is **granted in part and denied as moot in part**, as follows:

1.      The part of the Motion seeking dismissal of the D&O Defendants' May 27, 2014, Third-Party Complaint (docket no. 54) and the D&O Defendants' January 7, 2015, First Amended Third-Party Complaint (docket no. 113), pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, for lack of subject matter jurisdiction, is **granted**; and

2.      The parts of the Motion seeking dismissal of the D&O Defendants' May 27, 2014, Third-Party Complaint (docket no. 54) and the D&O Defendants' January 7, 2015, First Amended Third-Party Complaint (docket no. 113), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state claims upon which relief can be granted, are **denied as moot**.

**IT IS SO ORDERED**.

**DATED** this 6th day of March, 2015.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA